Civil Case No. 4:24-cv-295-O

Bankruptcy Case No. 22-42980-mxm11

Adversary Case No. 23-04018-mxm

Appellant – Mele L. Vaituulala Appellee –

N and K Properties, LLC

**Volume 2 - Appellant Designation**

Charles Chesnutt
9716 Edgepine Drive
Dallas TX 75238

COUNSEL FOR MELE VIATUULALA

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

IN RE:                                    CASE NO. 22-42980

      MELE L. VIATUULALA

DEBTOR

---------------------------------

MELE L. VIATUULALA                        ADV. NO. 23-04018
      Plaintiff

Verses

N and K PROPERITES LLC
      Defendant

# APPELLANT INDEX
## SECOND AMENDED DESIGNATION OF RECORD
## And ISSUES OF APPEAL

TO THE HONORABLE MARK X. MULLIN

The undersigned Appellant intends to use the following in her appeal:

**Volume 2:**

pg. 56    1. Final Judgment (#51)

pg. 58    2. Findings of Fact (#50)

pg. 75    3. Notice of Appeal (#54)

pg. 97    4. Transcript of Mele Viatuulala  Pages 99-110

      5. Transcript of Al Viatuulala  Pages 111-132

pg. 133   6. Deed (#47)    Pages 141-142

      7. Deed of Trust (#47)  Pages 136-140

The undersigned intents to raise the following of appeal:

Whether the court erred in finding that the homestead was sold.


Respectfully submitted by,

<u>Charles R. Chesnutt</u>

Charles R. Chesnutt, P.C.
9716 Edgepine Drive
Dallas Texas 75238

972.248.7000
crc@chapter7-11.com


### Certificate of Service

I certify that as of the day of filing, the opposing party and all interested parties received copies of this pleading.

<u>Charles Chesnutt</u>





CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 19, 2024**

*Mark X. Mullin*

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MELE L. VAITUULALA | § | CASE NO. 22-42980-MXM11 |
| | § | |
| DEBTOR. | § | CHAPTER 11 |
| | § | |
| MELE L. VAITUULALA, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | ADV. NO. 23-04018 |
| | § | |
| N AND K PROPERTIES, LLC, | § | |
| | § | |
| DEFENDANT. | § | |

## FINAL JUDGMENT
[*Relates to Adv. ECF No. 1, 50*]

Pursuant to the Court's *Findings of Fact and Conclusions of Law*[1] entered on this date, the Court enters this Final Judgment.

---

[1] Adv. ECF No. 50.

It is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that each of Plaintiff's counts against Defendant in the Complaint[2] are hereby **DENIED** and **DISMISSED**, with prejudice; and it is further

**ORDERED** that each of Defendant's affirmative defenses in the Answer[3] are **DENIED** as **MOOT**; and it is further

**ORDERED** that each of Defendant's counterclaims against Debtor in the Answer are **DENIED** as **MOOT**.

This Final Judgment disposes of the entire Adversary Proceeding and is final and immediately appealable.

### END OF FINAL JUDGMENT ###

---

[2] *Complaint to Determine Validity and Extent of a Lien*, Adv. ECF No. 1 (the "***Complaint***").

[3] *Defendant's Answer to the Complaint to Determine the Validity and Extent of a Lien & Counterclaims*, Adv. ECF No. 17 (the "***Answer***").





CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed March 19, 2024

_Mark X. Mullin_

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MELE L. VAITUULALA | § | CASE NO. 22-42980-MXM11 |
| | § | |
| DEBTOR. | § | CHAPTER 11 |
| | § | |
| MELE L. VAITUULALA, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | ADV. NO. 23-04018 |
| | § | |
| N AND K PROPERTIES, LLC, | § | |
| | § | |
| DEFENDANT. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

[*Relates to Adv. ECF No. 1*]

The Court conducted a trial on the *Complaint to Determine Validity and Extent of a Lien*[1]

(the "***Complaint***") filed by Mele L. Vaituulala (the "***Debtor***").

---

[1] Adv. ECF No. 1.

1

The Court reviewed and carefully considered the Complaint, the Answer[2] filed by N and K Properties, LLC (the "***Defendant***"), the Stipulated Facts in the Amended Joint Pre-Trial Order,[3] the testimony of witnesses, the exhibits admitted into evidence, the arguments of counsel, the post-trial briefs filed by the parties, and relevant case law. This Findings of Fact and Conclusions of Law constitutes the Court's findings and conclusions required by Federal Rule of Civil Procedure 52, made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052.[4]

## I.    JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and the standing order of reference in this district. This adversary proceeding constitutes a core proceeding over which the Court has statutory and constitutional authority to enter a final order or judgment. Even if this Court would not otherwise have jurisdiction or authority to enter a final judgment, the Court finds that the parties have consented to the Court's issuance of a final judgment in this proceeding. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## II.    BACKGROUND FACTS

Debtor and her husband, Mr. Al Vaituulala, Sr. ("***Husband***") (together, the "***Vaituulalas***") owned the house located at 2005 Stacey Court, Arlington, TX ("***Stacey Court Home***"). The Vaituulalas lived at the Stacey Court Home together for approximately 40 years until Husband passed away in December 2022. Debtor contends that the Stacey Court Home "is and was her

---

[2] *Defendant's Answer to the Complaint to Determine the Validity and Extent of a Lien & Counterclaims*, Adv. ECF No. 17 (the "***Answer***").
[3] ECF No. 33.
[4] Any findings of fact that should more appropriately be characterized as a conclusion of law should be regarded as such, and *vice versa*.

000059

homestead" and that "she was the rightful owner of the [Stacey Court Home] at the commencement of this case."[5]

The Vaituulalas' son, Mr. Alifeleti Kaumana Vaituulala, Jr. ("*Al, Jr.*"), is a California investor and was the owner of AK Builders and Coatings, Inc., a California corporation ("*AK Builders*"). In the fall of 2019, AK Builders was experiencing financial difficulties and needed to borrow funds. Therefore, Al, Jr.—on behalf of AK Builders—approached Defendant requesting to borrow $125,000. Before agreeing to fund a loan, however, Defendant required AK Builders to execute a note and secure the note with collateral acceptable to Defendant. Not wanting to offer any of his own personal assets as collateral to secure the loan, Al, Jr. devised a scheme to use his parents' Stacey Court Home as collateral to secure AK Builder's loan from Defendant.

A.    **The transaction between the Vaituulalas and AK Builders—as evidenced by the Deed with Vendor's Lien**

To enable AK Builders to use the Stacey Court Home as collateral for its loan from Defendant, Al, Jr. encouraged his elderly parents to execute a *General Warranty Deed with Vendor's Lien* (the "***Deed with Vendor's Lien***")[6] to convey their Stacey Court Home to AK Builders. This conveyance would then allow AK Builders to use the Stacey Court Home as collateral for the $125,000 loan from Defendant. In support of their son's request, the Vaituulalas executed the Deed with Vendor's Lien on October 28, 2019.

General warranty deeds with vendors' liens are common and enforceable in Texas to document a purchase money security interest transaction. This particular Deed with Vendor's Lien, however, is a bit unusual as it purports to do the following:

---

[5] Complaint, ECF No. 1, pg. 2 ¶ 1.
[6] Pl. Ex. 2 at pg. 1; D. Ex. 1 at pg. 1.

000060

- The Vaituulalas agreed to "GRANT, SELL and CONVEY all of their interest to [AK Builders] in the [Stacey Court Home] . . . ."[7]

- The consideration paid by AK Builders for the conveyance of the Stacey Court Home was "Ten Dollars ($10.00) and a note of even date executed by [AK Builders] and payable to the order of [Defendant] in the principal amount of One Hundred Twenty-Five Thousand Dollars ($125,000). This note is secured by a first and superior Vendor's Lien and Superior Title retained in this deed in favor of [the Vaituulalas] **and transferred to [Defendant]** by a first-lien deed of trust of even date from [AK Builders] to [Trustee]."[8]

- The Deed with Vendor's Lien provided further that "it is expressly agreed that the Vendor's Lien, as well as the Superior Title in and to the [Stacey Court Home], is retained against the [Stacey Court Home] until the above described [$125,000 Note] and all interest thereon are fully paid according to the face, tenor, effect and reading thereof, when this Deed shall become absolute."[9]

Consequently, under the terms of the Deed with Vendor's Lien, the Vaituulalas purportedly received consideration of $10 for the conveyance of the Stacey Court Home to AK Builders. AK Builders, on the other hand, received title to the Stacey Court Home and the $125,000 loan proceeds from Defendant.[10] Additionally, the Vendor's Lien retained by the Vaituulalas in the Deed with Vendor's Lien was transferred by the Vaituulalas to Defendant to secure the $125,000 Note executed by AK Builders in favor of the Defendant.

The Deed with Vendor's Lien transaction was further evidenced by a *Settlement Statement*[11] executed by the Vaituulalas and Al, Jr. (on behalf of AK Builders). The Settlement Statement also referenced the $125,000 loan provided by Defendant to AK Builders.

The Deed with Vendor's Lien was then recorded in the official real property records of Tarrant County, Texas, on November 4, 2019.

---

[7] *Id.*
[8] *Id.* (emphasis added)
[9] Pl. Ex. 2 at pg. 2; D. Ex. 1 at pg. 2.
[10] There is no evidence in the record to explain or disclose what AK Builders did with the $125,000 loan proceeds, other than it went into a bank account owned by AK Builders.
[11] D. Ex. 11.

000061

Based on the credible evidence and specifically the testimony of Debtor, the Court finds that Debtor had very limited or no understanding of the consequences resulting from her execution of the Deed with Vendor's Lien—she was simply complying with the instructions from Husband and Al, Jr.

**B.    The loan transaction between AK Builders and Defendant—as evidenced by the $125,000 Note and Deed of Trust**

If furtherance of Al, Jr.'s scheme to obtain the loan from Defendant, also on October 28, 2019, AK Builders and Defendant then entered in the following loan transaction:

- Al, Jr., on behalf of AK Builders, executed the $125,000 Note[12] made payable to Defendant;

- Al, Jr., on behalf of AK Builders, also executed the Deed of Trust[13] granting Defendant a lien in the Stacey Court Home (also referenced in the Deed with Vendor's Lien); and

- Defendant funded the $125,000 Note to AK Builders.[14]

The Deed of Trust was subsequently recorded in the official real property records of Tarrant County, Texas, on December 18, 2019.

The $125,000 Note obligation incurred by AK Builders is troubling for two independent reasons. First, the $125,000 Note had a three-month term with a balloon payment of $155,000, due January 28, 2020—which equates to an interest rate of just under **_140%_**.

Second, even more concerning, AK Builders entered into (i) the Deed with Vendor's Lien transaction with Al, Jr's parents; and then (ii) the $125,000 Note and Deed of Trust transaction with the Defendant **_while AK Builders was a Debtor-In-Possession in its own Chapter 11_**

---

[12] D. Ex. 2.
[13] _Deed of Trust_ (the "**_Deed of Trust_**"), Pl. Ex. 4; _see also_ D. Ex. 3.
[14] The Court takes judicial notice of the _Monthly Operating Report for Small Business Under Chapter 11_ filed in the AK Builders California Bankruptcy Case (defined _infra_) at [Cal. ECF No. 40] (reflecting the net loan proceeds deposit into AK Builders bank account).

000062

*bankruptcy case* pending in the Eastern District of California.[15] As detailed more fully below, the record established that neither of these transactions were ever disclosed or approved by the bankruptcy court in the AK Builders California Bankruptcy Case.

**C.    The AK Builders California Bankruptcy Case**

On July 29, 2019—three months *prior* to entering into (i) the Deed with Vendor's Lien transaction, and (ii) the $125,000 Note and Deed of Trust transactions—AK Builders filed a *Voluntary Petition for Non-Individuals Filing for Bankruptcy*[16] seeking relief under Chapter 11 of Title 11 of the United States Code. The petition was signed by Al, Jr. on behalf of AK Builders. There is no evidence in the record to establish or suggest that AK Builders sought or obtained Bankruptcy Court approval prior to entering into either (i) the Deed with Vendor's Lien transaction with the Vaituulalas, or (ii) the $125,000 Note and Deed of Trust transaction with Defendant.[17]

Additionally, based on the credible evidence at trial, the Court finds and concludes that neither Debtor nor Defendant had any notice or knowledge that AK Builders was a debtor-in-possession in its own Chapter 11 bankruptcy case when they entered into the above transactions with AK Builders. The Court further finds and concludes that Al, Jr.'s failure to disclose AK Builders' bankruptcy was purposeful to implement his scheme to use the Vaituulalas' home to obtain the $125,000 loan from Defendant.

---

[15] *In re AK Builders and Coatings, Inc*., Case No. 19-24759 filed in the United States Bankruptcy Court Eastern District of California (the "*AK Builders California Bankruptcy Case*").

[16] *Id.* at [Cal. ECF No. 1].

[17] The Court has taken judicial notice of the AK Builders California Bankruptcy Case docket sheet, and there is no entry on the docket to indicate or suggest that AK Builders filed a motion or obtained bankruptcy court approval to enter into either the Deed with Vendor's Lien transaction or the $125,000 Note and Deed of Trust transaction. The Court also listened to the hearings conducted in the AK Builders' California Bankruptcy Case on September 10, 2019 [Cal. ECF No. 26], October 22, 2019 [Cal. ECF No. 37], October 22, 2019 [Cal. ECF No. 37], December 4, 2019 [Cal. ECF No. 46], and February 19, 2020 [Cal. ECF No. 76]. Not one time did counsel for AK Builders inform the California Bankruptcy Court that AK Builders entered into the transactions with the Vaituulalas or with Defendant.

000063

### D.    AK Builders fails to pay the $125,000 Note

While still in its Chapter 11 bankruptcy case, AK Builders failed to pay the $125,000 Note owing to Defendant by its January 28, 2020, due date, causing the $125,000 Note to go into default. Because the $125,000 Note was in default and accelerated under its own terms, Defendant filed a *Notice of Foreclosure Sale*[18] with the County Clerk of Tarrant County, Texas, scheduling the Stacey Court Home for an April 7, 2020, foreclosure sale.

On April 7, 2020, Defendant then conducted the scheduled foreclosure sale, at which the Defendant's credit bid of $135,000 was accepted by the Substitute Trustee under the Deed of Trust as the highest bid at the scheduled foreclosure sale. The Substitute Trustee thereafter executed and then filed the *Substitute Trustee's Deed*[19] in the real property records of Tarrant County, Texas, conveying the Stacey Court Home to Defendant.

Again, the credible evidence suggests that (i) AK Builders failed to disclose any of these transactions in its pending California Chapter 11 bankruptcy case; and (ii) the Defendant had no notice and was not aware that AK Builders was a debtor-in-possession when Defendant scheduled and conducted the foreclosure sale of the Stacey Court Home.

On July 16, 2020—several months after the Stacey Court Home was conveyed to Defendant by the Substitute Trustee's Deed—AK Builders' Chapter 11 California Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code.

It was not until November 26, 2020—more than sixteen months after AK Builders filed its California Chapter 11 bankruptcy case and more than four months after its Chapter 11 case was converted to Chapter 7—that AK Builders filed an Amended Schedule A/B and Schedule D,[20]

---

[18] D. Ex. 5.
[19] D. Ex. 6.
[20] D. Ex. 4.

7

thus disclosing for the first time in the AK California Bankruptcy Case that AK Builders allegedly

owned the Stacey Court Home and that Defendant was a creditor of AK Builders.

**E.     Following the Foreclosure of the Stacey Court Home, Defendant and Al, Jr., on behalf of AK Builders, enter into a Residential Lease Agreement for the Stacey Court Home**

Following Defendant's acquisition of the Stacey Court Home at foreclosure and while AK

Builders was still a Chapter 11 debtor-in-possession, Defendant and Al, Jr., on behalf of AK

Builders, entered into a *Residential Lease Agreement*[21] on April 27, 2020. Again, there is no record

in the AK Builders California Bankruptcy Case that AK Builders obtained bankruptcy court

approval to enter into the lease.

The Residential Lease Agreement provided, in part:

> 5. **USE OF PREMISES**. The Premises shall be used and occupied solely by Tenant and Tenant's immediate family, consisting of AK Builders (AL Vaituulala), exclusively, as a private single family dwelling. . . .[22]

Tenant is defined in the lease as "Al Vaituulala for AK Builders and Coatings (hereinafter

referred to as 'Tenant.'"[23]

Al, Jr. testified that he did not execute or authorize an electronic version of his signature to

be placed on the Residential Lease Agreement. The Court found Al, Jr.'s testimony—that he did

not execute or enter into the Residential Lease Agreement on behalf of AK Builders—not credible.

On the other hand, the Court found the testimony of Mr. Narinder Bains—the representative of

Defendant—to be credible on this issue. Additionally, Mr. Bains's testimony was corroborated by

(i) two rent checks in the amount of $2,100[24]—the rent due under the Residential Lease

Agreement—signed by Al, Jr. on behalf of AK Builders and made payable to Mr. Subodh

---

[21] D. Ex. 7.
[22] D. Ex. 7 at pg. 2 (parenthetical in original).
[23] D. Ex. 7 at pg. 1.
[24] D. Ex. 8.

8

Banerjee, the property manager for Defendant; (ii) the two rent checks were also reflected in the May 2020[25] and June 2020[26] Monthly Operating Reports signed by Al, Jr. and filed in the AK Builders California Bankruptcy Case (but the purpose of the checks was not disclosed); and (iii) real property tax payments[27] for the Stacey Court Home were made on behalf of Defendant after it acquired the Stacey Court Home at the foreclosure sale.

The Residential Lease Agreement terminated under its terms, but the Vaituulalas failed to vacate the Stacey Court Home. Therefore, on or about November 21, 2022, Defendant initiated a Texas state court eviction proceeding seeking to evict the Vaituulalas from the Stacey Court Home. To prevent the trial in the eviction proceeding from going forward, Debtor filed her underlying bankruptcy case and then the Complaint initiating this Adversary Proceeding.

**F.    Debtor ultimately vacated the Stacey Court Home and moved to Hawaii to live with her daughter**

Debtor testified that, after Husband passed in December 2022, she was afraid to live alone in the Stacey Court Home and could not take care of herself. Therefore, she moved to Hawaii to live with her daughter. She testified further that she had no intention of returning to live alone in the Stacey Court Home.

## III.    ANALYSIS

Debtor filed her Complaint against Defendant contending:

i.    The Stacey Court Home is her homestead, and it was encumbered by Defendant without her knowledge;[28] and

---

[25] Cal. ECF No. 142 at pg. 10.
[26] Cal. ECF No. 143 at pg. 9.
[27] D. Ex. 12.
[28] Amended Joint Pre-Trial Order, Adv. ECF No. 33, pg. 1.

000066

ii.   The transfer of the Stacey Court Home to AK Builders was a "pretended sale" and is void under Texas Constitution Article XVI § 50(c). Consequently, AK Builders' subsequent transactions with Defendant, including the foreclosure sale of the Stacey Court Home, are void.[29]

Defendant denies Debtor's claims on the merits and asserts the following affirmative defenses:

- *Estoppel*—Defendant contends Debtor "is estopped from contending that the [Deed with Vendor's Lien] she signed and had notarized has no legal effect because she intended for the transaction to be a sham."[30]

- *Bona Fide Third-Party Lender Without Notice*—Defendant contends that it "was a bona fide lender that acquired its interest in the property in good faith, for value, and without notice of the claim or interest of the Vaituulalas."[31]

- *Equitable and Contractual Subrogation*—Defendant contends it is entitled to equitable and contractual subrogation for the funds it loaned and for its payment of property taxes and other costs incurred relating to the Stacey Court Home.[32]

- *Laches*—Defendant contends that, "[b]ecause [Defendant] has changed its position and because [Debtor] delayed asserting her claims until approximately three years since transferring the property, [Defendant] is entitled to the defense of laches."[33]

---

[29] Complaint, Adv. ECF No. 1, pg. 6 ¶ 30(a).
[30] Answer, Adv. ECF No. 17, pg. 3 ¶ 34.
[31] Answer, Adv. ECF No. 17, pg. 4 ¶ 42.
[32] Answer, Adv. ECF No. 17, pg. 5 ¶ 44.
[33] Answer, Adv. ECF No. 17, pg. 6 ¶ 51.

000067

Defendant also asserts counterclaims against Debtor "for fraud, misrepresentation, fraud by nondisclosure, negligent misrepresentation, conspiracy to commit fraud, and aiding and abetting AK Builders to fraudulently induce [Defendant] to make a loan to AK Builders."[34]

The Court will address each parties' claims, in turn.

## A.    Debtor's Claims

### 1.    Debtor contends that the Stacey Court Home is her Homestead

Debtor first contends that the Stacey Court Home was and is her homestead. It is well accepted that Texas law provides extremely broad protection for homesteads through the Texas Constitution and the Texas Property Code.[35]

The initial burden of proof falls on Debtor to "establish the character of the claimed property by showing a combination of both (1) overt acts of homestead usage, and (2) an intention to claim the property as a homestead."[36] This initial burden is typically a low hurdle, and, in the usual case, mere evidence of "overt acts of homestead usage" in the form of possession and usage of the property as a homestead is sufficient.[37] As more fully detailed above, Debtor satisfied this "low hurdle" by establishing that she and her Husband lived in the Stacey Court Home for many decades as their homestead prior to executing the Deed and Vendor's Lien on October 28, 2019.

Because Debtor has made a *prima facie* case in favor of homestead status, Defendant now "has the burden of demonstrating that [Debtor's] homestead rights have been terminated."[38]

---

[34] Answer, Adv. ECF No. 17, pg. 6 ¶ 52.

[35] *See* Tex. Const. art. XVI, § 50; Tex. Property Code Ann. § 41.001; *see also Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex. 1992). Statutes relating to homestead rights are to be liberally construed. *See Inwood N. Homeowners' Ass'n v. Harris*, 736 S.W.2d 632, 634–35 (Tex. 1987). "The Texas Constitution has long protected homeowners against the forced sale of their homesteads." *Paull & Partners Inv., LLC v. Berry*, 558 S.W.3d 802, 809 (Tex. App. 2018).

[36] *In re Brei*, 599 B.R. 880, 892–93 (Bankr. N.D. Tex. 2019).

[37] *Bradley v. Pac. S.W. Bank, FSB (In re Bradley)*, 960 F.2d 502, 507 (5th Cir. 1992) (internal citations and quotations omitted); *see also In re Comu*, 542 B.R. 371, 384 (Bankr. N.D. Tex. 2015).

[38] *Perry v. Dearing (In re Perry)*, 345 F.3d 303, 311 (5th Cir. 2003); *see also* FED. R. BANKR. P. 4003(c).

11

000068

Texas law provides that homestead rights "may be lost only through death, *abandonment* or *alienation*."[39] Consequently, the Court must determine if the Vaituulalas lost their homestead rights in the Stacey Court Home through abandonment or alienation when they entered into the transaction with AK Builders and executed the Deed with Vendor's lien.

Courts often fail to distinguish between abandonment and alienation as separate means of losing or extinguishing homestead rights in Texas.[40] "Abandonment requires cessation or discontinuance of the use of the property coupled with intent to abandon permanently the homestead. . . . Homestead status may be lost through alienation when the title to the property is transferred or conveyed to another, regardless of whether the grantor retains possession of the property."[41]

### a. Debtor Alienated her Homestead rights in the Stacey Court Home

Defendant argues that the Vaituulalas lost and extinguished their homestead rights in the Stacey Court Home by alienation when they conveyed it to AK Builders in the Deed with Vendor's Lien. Debtor responds contending that (i) she never intended to alienate her homestead rights when she executed the Deed with Vendor's Lien, and (ii) the Deed with Vendor's Lien constitutes a "pretended sale" and is void under the Texas Constitution[42] (addressed *infra*).

Subject to the Debtor's "pretended sale" argument (addressed *infra*), the Court finds and concludes that, up until the Vaituulalas executed the Deed with Vendor's Lien, the Stacey Court Home was, in fact, their homestead under Texas law. But, when the Vaituulalas conveyed the

---

[39] *Perry v. Dearing (In re Perry)*, 345 F.3d at 310 (emphasis added); *see also Paull & Partners Inv., LLC v. Berry*, 558 S.W.3d at 809 (quoting *In re Perry*, 345 F.3d 303, 310 (5th Cir. 2003)); *see also In re Comu*, 542 B.R. at 385. *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 160 (Tex. 2015)

[40] *Perry v. Dearing (In re Perry)*, 345 F.3d at 310, n. 8.

[41] *Id.* (internal citations omitted); *see also* Black's Law Dictionary (11th ed. 2019) (defines alienation as "[c]onveyance or transfer of property to another.").

[42] Tex. Const. art. XVI, § 50(c).

000069

Stacey Court Home to AK Builders, the Stacey Court Home lost its homestead character, even though the Vaituulalas continued to occupy the property after the conveyance to AK Builders.[43]

Under the clear and unambiguous terms of the Deed with Vendor's Lien, title to the Stacey Court Home vested in AK Builders as of October 28, 2019. Debtor's testimony that she did not understand the consequences of her voluntary decision to execute the Deed with Vendor's Lien is unavailing.

The Court finds and concludes that Debtor voluntarily alienated her homestead rights in the Stacey Court Home by executing the Deed with Vendor's Lien and conveying the property to Al, Jr.'s company, AK Builders. Accordingly, Debtor's claim that she did not alienate her homestead rights in the Stacey Court Home is without merit and is ***DENIED***.

> b. *Debtor Abandoned her Homestead rights in the Stacey Court Home*

Because the Court finds and concludes that the Vaituulalas alienated their ownership and homestead rights in the Stacey Court Home as of October 28, 2019, by agreeing to the transaction with AK Builders and executing the Deed with Vendor's Lien, the Court need not find if, or when, Debtor "abandoned" her homestead rights in the Stacey Court Home. With that said, by her own testimony, to the extent the Debtor had a homestead right in the Stacey Court Home, she abandoned any such potential homestead right upon moving to Hawaii to live with her daughter with no intent to return to the Stacey Court Home.

---

[43] *Perry v. Dearing (In re Perry)*, 345 F.3d at 311; *see also Paull & Partners Inv., LLC v. Berry*, 558 S.W.3d 802, 809 (Tex. App. 2018) ("[h]omeowners may lawfully convey their homestead to a corporation, even if they remain in the home after the sale, for purpose of obtaining a loan."); *Eckard v. Citizens Nat'l Bank in Abilene*, 588 S.W.2d 861, 862 (Tex.Civ. App.—Eastland 1979, writ ref'd n.r.e.) (homeowner could sell home to corporation so corporation could borrow money and put valid lien on property).

000070

Therefore, the Court finds and concludes that Debtor has abandoned whatever homestead right she may have had in the Stacey Court Home. Accordingly, Debtor's claim that the Stacey Court Home continues to constitute her homestead is **DENIED**.

### 2.      *Debtor contends that the Deed with Vendor's Lien is a void "Pretended Sale"*

Debtor next contends that the Deed with Vendor's Lien constitutes a void "pretended sale" under the Texas Constitution. The Texas Constitution provides that any sales deemed "pretended" also containing "any condition of defeasance" are void.[44]

"A 'pretended sale' is one in which the parties do not intend title to vest in the purchaser, but rather that title will be divested within a certain amount of time by paying the specified amount."[45] Therefore, to constitute a valid "pretended sale" under Texas law, the Debtor must establish (i) "a lack of intent to vest title"[46] and (ii) "the transfer involves a condition allowing the seller to reclaim title to the property after the loan is repaid[,]"[47] or said another way, the transfer must include "a condition of defeasance[.]"[48]

The party asserting a claim of "pretended sale" must provide credible evidence to satisfy both elements of the "pretended sale."[49] Based on the credible evidence in the record, the Court finds and concludes that Debtor failed to establish either element of a "pretended sale."

Although Debtor testified that she did not understand the consequences resulting from her execution of the Deed with Vendor's Lien, the Court finds that Debtor's testimony alone is insufficient to overcome the overwhelming evidence that suggests the Vaituulalas intended to

---

[44] Tex. Const. art. XVI, § 50(c); *see also State v. Forest Lawn Lot Owners Ass'n,* 152 Tex. 41, 48 (Tex. 1953).
[45] *Paull & Partners Inv.*, 558 S.W.3d at 810.
[46] *Paull & Partners Inv.*, 558 S.W.3d at 806.
[47] *Paull & Partners Inv.*, 558 S.W.3d at 810 and 813.
[48] *Paull & Partners Inv.*, 558 S.W.3d at 806.
[49] *Paull & Partners Inv.*, 558 S.W.3d at 810.

000071

comply with Al, Jr.'s request by conveying the Stacey Court Home to AK Builders.[50] Additionally, the overwhelming evidence established that (i) the Vaituulalas knew the conveyance of the Stacey Court Home to AK Builders was being made so Al, Jr.'s business could obtain a loan from Defendant; (ii) a title commitment was being issued by Chicago Title Insurance Company that AK Builders was the fee simple owner of the Stacey Court Home under the Deed with Vendor's Lien;[51] and (iii) the Vaituulalas voluntarily assigned the Vendor's Lien retained in the Deed with Vendor's Lien to Defendant.[52]

Therefore, based on the credible evidence in the record, the Court finds and concludes that Debtor failed to establish that she lacked the intent to vest title of the Stacey Court Home in AK Builders when she executed the Deed with Vendor's Lien. Consequently, the Deed with Vendor's Lien does not constitute a "pretended sale" rendered void by the Texas Constitution.

Even if Debtor was able to establish that she lacked the necessary intent to vest title of the Stacey Court Home in AK Builders (to be clear, the Court does not so find), Debtor also failed to establish that the Deed with Vendor's Lien was subject to a condition of defeasance. "A condition of defeasance is a condition that permits the seller to reclaim title to the property after the [subject] debt has been paid."[53]

Although the condition of defeasance need not be expressly stated in the conveyance instrument itself, such a condition of defeasance must be implied or stated in a contemporaneous document.[54] Other than Debtor's and Al, Jr.'s unpersuasive self-serving testimony, neither Debtor

---

[50] *Paull & Partners Inv.*, 558 S.W.3d at 811; *Adams v. First Nat'l Bank of Bells/Savory*, 154 S.W.3d 859, 870 (Tex. App.—Dallas 2005, no pet.) (a secret or undisclosed intent to convey title, or a subsequent change of intent, will not affect the validity of the conveyance).

[51] D. Ex. 10.

[52] D. Ex. 1.

[53] *Paull & Partners Inv.*, 558 S.W.3d at 813.

[54] *Paull & Partners Inv.*, 558 S.W.3d at 813; *see also Anglin v. Cisco Mortg. Loan Co.*, 135 Tex. 188, 141 S.W.2d 935, 941 (1940) (where express condition of defeasance not recited in the deed, "equity looks to all the circumstances preceding and attending the execution of the instrument[.]").

000072

nor Al, Jr. could point to any provision in the Deed with Vendor's Lien or any other contemporaneous document that expressly or impliedly provided for a condition of defeasance. Debtor could not point to any document that expressly or impliedly provided her with the right to compel AK Builders to convey the Stacey Court Home back to her once AK Builders satisfied the $125,000 Note to Defendant. Nor is there any credible evidence in the record to suggest that AK Builders made contemporaneous statements or put forth in any documents that AK Builders intended to reconvey the Stacey Court Home to the Vaituulalas once the $125,000 Note had been satisfied.

The only provision Debtor points to as a "condition of defeasance" is the retention by the Vaituulalas of the Vendor's Lien—of which they conveyed to Defendant. But a vendor's lien retained in a deed does not constitute a condition of defeasance.

Based on the credible evidence in the record, the Court finds and concludes that Debtor failed to establish that the Deed with Vendor's Lien was subject to a condition of defeasance. Consequently, the Deed with Vendor's Lien does not constitute a "pretended sale" rendered void by the Texas Constitution.

The Court finds and concludes that the transaction between the Vaituulalas and AK Builders evidenced by the Deed with Vendor's Lien does not constitute a "pretended sale" in violation of the Texas Constitution. Accordingly, Debtor's claim that the transfer of the Stacey Court Home to AK Builders was a "pretended sale" and is void under Texas Constitution Article XVI § 50(c) is without merit and is ***DENIED***.

000073

B.        **Defendant's Affirmative Defenses**

Because all of Debtor' claims against Defendant are denied on the merits, the Court need not address Defendant's affirmative defenses. Consequently, Defendant's affirmative defenses are ***DENIED*** as ***MOOT***.

C.        **Defendant's Counterclaims**

Based on the credible evidence in the record, and as fully addressed *supra*, the Court finds and concludes that the Vaituulalas conveyed title of the Stacey Court Home to AK Builders by the Deed with Vendor's Lien. The Court further finds and concludes that the Vaituulalas assigned the Vendor's Lien they retained in the Deed with Vendor's Lien to the Defendant. Additionally, the Court finds and concludes that (i) the Deed of Trust secured the $125,000 Note made by AK Builders to Defendant; and (ii) the April 7, 2020, foreclosure sale conveyed title of the Stacey Court Home to the Defendant.

Based on these findings and conclusions, the Court further finds and concludes that Defendant's counterclaims are moot.

Therefore, Defendant's counterclaims against Debtor are ***DENIED*** as ***MOOT***.

### IV.    CONCLUSION

Each of Debtor's claims against Defendant fail and are ***DENIED***.

Each of Defendant's affirmative defenses are ***DENIED*** as ***MOOT***.

Each of Defendant's counterclaims against Debtor are ***DENIED*** as ***MOOT***.

Consequently, the Court will enter a separate final judgment consistent with these Findings of Fact and Conclusions of Law.

### ### END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW ###

000074

CHARLES R. CHESNUTT, P.C.
9716 Edgepine Drive
Dallas TX 75287

COUNSEL FOR MELE VIATUULALA

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

IN RE:                                          CASE NO. 22-42980

      MELE L. VIATUULALA

DEBTOR

------------

MELE L. VIATUULALA                              ADV. NO. 23-04018
      Plaintiff

      vs

N AND K PROPERTIES LLC
      Defendant

------------

### NOTICE OF APPEAL

TO THE HONORABLE MARK X. MULLIN

Mele L. Viatuulala, the Plaintiff herein, appeals under 28 USC §158(a) and (b)

from the *Final judgment* and *Findings of Fact and Conclusions of Law* of the Honorable

Mark X. Mullin, Bankruptcy Judge signed March 19, 2024.

The names of all parties to the judgment appealed from and the names, addresses,

and telephone numbers of their respective attorneys are as follows:

1

The Appellant:

    1. Name of Appellant: Mele Viatuulala

    2. Position of Appellant in Adversary: Plaintiff

The Appellee:

    1. N and K Properties LLC

    2. Position of Appellee: Defendant

Mrs. Mele L. Viatuulala represented by:

    Charles R. Chesnutt
    9716 Edgepine
    Dallas TX75204

    crc@chapter7-11.com
    pleadings@chapter7-11.com

    972.248.7000

N and K Properties LLC represented by:

    Clayton Everett
    515 E. Border Street
    Arlington TX 76101

    clayton@norridlaw.com
    817.704.3984


Respectfully submitted by,

s/  Charles R. Chesnutt

CHARLES R. CHESNUTT, P.C.
9716 Edgepine Drive
Dallas TX 75238    Texas Bar 04186800
_____

972.248.7000
972.559.1872 (fax)
crc@chapter7-11.com

COUNSEL FOR MELE VIATUULALA

000076

**Certificate of Service**

The undersigned hereby certifies that on Friday, March 29, 2024 he caused a copy of the above and foregoing to be served on all those requesting service.

s/ Charles R. Chesnutt

000077



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 19, 2024**

*Mark X. Mullin*

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MELE L. VAITUULALA | § | CASE NO. 22-42980-MXM11 |
| | § | |
| DEBTOR. | § | CHAPTER 11 |
| | § | |
| MELE L. VAITUULALA, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | ADV. NO. 23-04018 |
| | § | |
| N AND K PROPERTIES, LLC, | § | |
| | § | |
| DEFENDANT. | § | |

### FINAL JUDGMENT
*[Relates to Adv. ECF No. 1, 50]*

Pursuant to the Court's *Findings of Fact and Conclusions of Law*[1] entered on this date,

the Court enters this Final Judgment.

---

[1] Adv. ECF No. 50.

It is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that each of Plaintiff's counts against Defendant in the Complaint[2] are hereby **DENIED** and **DISMISSED**, with prejudice; and it is further

**ORDERED** that each of Defendant's affirmative defenses in the Answer[3] are **DENIED** as **MOOT**; and it is further

**ORDERED** that each of Defendant's counterclaims against Debtor in the Answer are **DENIED** as **MOOT**.

This Final Judgment disposes of the entire Adversary Proceeding and is final and immediately appealable.

### END OF FINAL JUDGMENT ###

---

[2] *Complaint to Determine Validity and Extent of a Lien*, Adv. ECF No. 1 (the "***Complaint***").
[3] *Defendant's Answer to the Complaint to Determine the Validity and Extent of a Lien & Counterclaims*, Adv. ECF No. 17 (the "***Answer***").




CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

**Signed March 19, 2024**

*United States Bankruptcy Judge*

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MELE L. VAITUULALA | § | CASE NO. 22-42980-MXM11 |
| | § | |
| DEBTOR. | § | CHAPTER 11 |
| | § | |
| MELE L. VAITUULALA, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | ADV. NO. 23-04018 |
| | § | |
| N AND K PROPERTIES, LLC, | § | |
| | § | |
| DEFENDANT. | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW
[*Relates to Adv. ECF No. 1*]

The Court conducted a trial on the *Complaint to Determine Validity and Extent of a Lien*[1]

(the "***Complaint***") filed by Mele L. Vaituulala (the "***Debtor***").

---

[1] Adv. ECF No. 1.

1

The Court reviewed and carefully considered the Complaint, the Answer[2] filed by N and K Properties, LLC (the "***Defendant***"), the Stipulated Facts in the Amended Joint Pre-Trial Order,[3] the testimony of witnesses, the exhibits admitted into evidence, the arguments of counsel, the post-trial briefs filed by the parties, and relevant case law. This Findings of Fact and Conclusions of Law constitutes the Court's findings and conclusions required by Federal Rule of Civil Procedure 52, made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052.[4]

## I.      JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and the standing order of reference in this district. This adversary proceeding constitutes a core proceeding over which the Court has statutory and constitutional authority to enter a final order or judgment. Even if this Court would not otherwise have jurisdiction or authority to enter a final judgment, the Court finds that the parties have consented to the Court's issuance of a final judgment in this proceeding. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## II.      BACKGROUND FACTS

Debtor and her husband, Mr. Al Vaituulala, Sr. ("***Husband***") (together, the "***Vaituulalas***") owned the house located at 2005 Stacey Court, Arlington, TX ("***Stacey Court Home***"). The Vaituulalas lived at the Stacey Court Home together for approximately 40 years until Husband passed away in December 2022. Debtor contends that the Stacey Court Home "is and was her

---

[2] *Defendant's Answer to the Complaint to Determine the Validity and Extent of a Lien & Counterclaims*, Adv. ECF No. 17 (the "***Answer***").
[3] ECF No. 33.
[4] Any findings of fact that should more appropriately be characterized as a conclusion of law should be regarded as such, and *vice versa*.

000081

homestead" and that "she was the rightful owner of the [Stacey Court Home] at the commencement of this case."[5]

The Vaituulalas' son, Mr. Alifeleti Kaumana Vaituulala, Jr. ("**Al, Jr.**"), is a California investor and was the owner of AK Builders and Coatings, Inc., a California corporation ("***AK Builders***"). In the fall of 2019, AK Builders was experiencing financial difficulties and needed to borrow funds. Therefore, Al, Jr.—on behalf of AK Builders—approached Defendant requesting to borrow $125,000. Before agreeing to fund a loan, however, Defendant required AK Builders to execute a note and secure the note with collateral acceptable to Defendant. Not wanting to offer any of his own personal assets as collateral to secure the loan, Al, Jr. devised a scheme to use his parents' Stacey Court Home as collateral to secure AK Builder's loan from Defendant.

**A.    The transaction between the Vaituulalas and AK Builders—as evidenced by the Deed with Vendor's Lien**

To enable AK Builders to use the Stacey Court Home as collateral for its loan from Defendant, Al, Jr. encouraged his elderly parents to execute a *General Warranty Deed with Vendor's Lien* (the "***Deed with Vendor's Lien***")[6] to convey their Stacey Court Home to AK Builders. This conveyance would then allow AK Builders to use the Stacey Court Home as collateral for the $125,000 loan from Defendant. In support of their son's request, the Vaituulalas executed the Deed with Vendor's Lien on October 28, 2019.

General warranty deeds with vendors' liens are common and enforceable in Texas to document a purchase money security interest transaction. This particular Deed with Vendor's Lien, however, is a bit unusual as it purports to do the following:

---

[5] Complaint, ECF No. 1, pg. 2 ¶ 1.
[6] Pl. Ex. 2 at pg. 1; D. Ex. 1 at pg. 1.

000082

- The Vaituulalas agreed to "GRANT, SELL and CONVEY all of their interest to [AK Builders] in the [Stacey Court Home] . . . ."[7]

- The consideration paid by AK Builders for the conveyance of the Stacey Court Home was "Ten Dollars ($10.00) and a note of even date executed by [AK Builders] and payable to the order of [Defendant] in the principal amount of One Hundred Twenty-Five Thousand Dollars ($125,000). This note is secured by a first and superior Vendor's Lien and Superior Title retained in this deed in favor of [the Vaituulalas] *and transferred to [Defendant]* by a first-lien deed of trust of even date from [AK Builders] to [Trustee]."[8]

- The Deed with Vendor's Lien provided further that "it is expressly agreed that the Vendor's Lien, as well as the Superior Title in and to the [Stacey Court Home], is retained against the [Stacey Court Home] until the above described [$125,000 Note] and all interest thereon are fully paid according to the face, tenor, effect and reading thereof, when this Deed shall become absolute."[9]

Consequently, under the terms of the Deed with Vendor's Lien, the Vaituulalas purportedly received consideration of $10 for the conveyance of the Stacey Court Home to AK Builders. AK Builders, on the other hand, received title to the Stacey Court Home and the $125,000 loan proceeds from Defendant.[10] Additionally, the Vendor's Lien retained by the Vaituulalas in the Deed with Vendor's Lien was transferred by the Vaituulalas to Defendant to secure the $125,000 Note executed by AK Builders in favor of the Defendant.

The Deed with Vendor's Lien transaction was further evidenced by a *Settlement Statement*[11] executed by the Vaituulalas and Al, Jr. (on behalf of AK Builders). The Settlement Statement also referenced the $125,000 loan provided by Defendant to AK Builders.

The Deed with Vendor's Lien was then recorded in the official real property records of Tarrant County, Texas, on November 4, 2019.

---

[7] *Id.*

[8] *Id.* (emphasis added)

[9] Pl. Ex. 2 at pg. 2; D. Ex. 1 at pg. 2.

[10] There is no evidence in the record to explain or disclose what AK Builders did with the $125,000 loan proceeds, other than it went into a bank account owned by AK Builders.

[11] D. Ex. 11.

4

000083

Based on the credible evidence and specifically the testimony of Debtor, the Court finds that Debtor had very limited or no understanding of the consequences resulting from her execution of the Deed with Vendor's Lien—she was simply complying with the instructions from Husband and Al, Jr.

**B.  The loan transaction between AK Builders and Defendant—as evidenced by the $125,000 Note and Deed of Trust**

If furtherance of Al, Jr.'s scheme to obtain the loan from Defendant, also on October 28, 2019, AK Builders and Defendant then entered in the following loan transaction:

- Al, Jr., on behalf of AK Builders, executed the $125,000 Note[12] made payable to Defendant;

- Al, Jr., on behalf of AK Builders, also executed the Deed of Trust[13] granting Defendant a lien in the Stacey Court Home (also referenced in the Deed with Vendor's Lien); and

- Defendant funded the $125,000 Note to AK Builders.[14]

The Deed of Trust was subsequently recorded in the official real property records of Tarrant County, Texas, on December 18, 2019.

The $125,000 Note obligation incurred by AK Builders is troubling for two independent reasons. First, the $125,000 Note had a three-month term with a balloon payment of $155,000, due January 28, 2020—which equates to an interest rate of just under ***140%***.

Second, even more concerning, AK Builders entered into (i) the Deed with Vendor's Lien transaction with Al, Jr's parents; and then (ii) the $125,000 Note and Deed of Trust transaction with the Defendant ***while AK Builders was a Debtor-In-Possession in its own Chapter 11***

---

[12] D. Ex. 2.
[13] *Deed of Trust* (the "***Deed of Trust***"), Pl. Ex. 4; *see also* D. Ex. 3.
[14] The Court takes judicial notice of the *Monthly Operating Report for Small Business Under Chapter 11* filed in the AK Builders California Bankruptcy Case (defined *infra*) at [Cal. ECF No. 40] (reflecting the net loan proceeds deposit into AK Builders bank account).

5

000084

*bankruptcy case* pending in the Eastern District of California.[15] As detailed more fully below, the record established that neither of these transactions were ever disclosed or approved by the bankruptcy court in the AK Builders California Bankruptcy Case.

### C.    The AK Builders California Bankruptcy Case

On July 29, 2019—three months *prior* to entering into (i) the Deed with Vendor's Lien transaction, and (ii) the $125,000 Note and Deed of Trust transactions—AK Builders filed a *Voluntary Petition for Non-Individuals Filing for Bankruptcy*[16] seeking relief under Chapter 11 of Title 11 of the United States Code. The petition was signed by Al, Jr. on behalf of AK Builders. There is no evidence in the record to establish or suggest that AK Builders sought or obtained Bankruptcy Court approval prior to entering into either (i) the Deed with Vendor's Lien transaction with the Vaituulalas, or (ii) the $125,000 Note and Deed of Trust transaction with Defendant.[17]

Additionally, based on the credible evidence at trial, the Court finds and concludes that neither Debtor nor Defendant had any notice or knowledge that AK Builders was a debtor-in-possession in its own Chapter 11 bankruptcy case when they entered into the above transactions with AK Builders. The Court further finds and concludes that Al, Jr.'s failure to disclose AK Builders' bankruptcy was purposeful to implement his scheme to use the Vaituulalas' home to obtain the $125,000 loan from Defendant.

---

[15] *In re AK Builders and Coatings, Inc*., Case No. 19-24759 filed in the United States Bankruptcy Court Eastern District of California (the "*AK Builders California Bankruptcy Case*").

[16] *Id.* at [Cal. ECF No. 1].

[17] The Court has taken judicial notice of the AK Builders California Bankruptcy Case docket sheet, and there is no entry on the docket to indicate or suggest that AK Builders filed a motion or obtained bankruptcy court approval to enter into either the Deed with Vendor's Lien transaction or the $125,000 Note and Deed of Trust transaction. The Court also listened to the hearings conducted in the AK Builders' California Bankruptcy Case on September 10, 2019 [Cal. ECF No. 26], October 22, 2019 [Cal. ECF No. 37], October 22, 2019 [Cal. ECF No. 37], December 4, 2019 [Cal. ECF No. 46], and February 19, 2020 [Cal. ECF No. 76]. Not one time did counsel for AK Builders inform the California Bankruptcy Court that AK Builders entered into the transactions with the Vaituulalas or with Defendant.

000085

**D.**      **AK Builders fails to pay the $125,000 Note**

While still in its Chapter 11 bankruptcy case, AK Builders failed to pay the $125,000 Note owing to Defendant by its January 28, 2020, due date, causing the $125,000 Note to go into default. Because the $125,000 Note was in default and accelerated under its own terms, Defendant filed a *Notice of Foreclosure Sale*[18] with the County Clerk of Tarrant County, Texas, scheduling the Stacey Court Home for an April 7, 2020, foreclosure sale.

On April 7, 2020, Defendant then conducted the scheduled foreclosure sale, at which the Defendant's credit bid of $135,000 was accepted by the Substitute Trustee under the Deed of Trust as the highest bid at the scheduled foreclosure sale. The Substitute Trustee thereafter executed and then filed the *Substitute Trustee's Deed*[19] in the real property records of Tarrant County, Texas, conveying the Stacey Court Home to Defendant.

Again, the credible evidence suggests that (i) AK Builders failed to disclose any of these transactions in its pending California Chapter 11 bankruptcy case; and (ii) the Defendant had no notice and was not aware that AK Builders was a debtor-in-possession when Defendant scheduled and conducted the foreclosure sale of the Stacey Court Home.

On July 16, 2020—several months after the Stacey Court Home was conveyed to Defendant by the Substitute Trustee's Deed—AK Builders' Chapter 11 California Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code.

It was not until November 26, 2020—more than sixteen months after AK Builders filed its California Chapter 11 bankruptcy case and more than four months after its Chapter 11 case was converted to Chapter 7—that AK Builders filed an Amended Schedule A/B and Schedule D,[20]

---

[18] D. Ex. 5.
[19] D. Ex. 6.
[20] D. Ex. 4.

7

thus disclosing for the first time in the AK California Bankruptcy Case that AK Builders allegedly

owned the Stacey Court Home and that Defendant was a creditor of AK Builders.

**E.      Following the Foreclosure of the Stacey Court Home, Defendant and Al, Jr., on behalf of AK Builders, enter into a Residential Lease Agreement for the Stacey Court Home**

Following Defendant's acquisition of the Stacey Court Home at foreclosure and while AK

Builders was still a Chapter 11 debtor-in-possession, Defendant and Al, Jr., on behalf of AK

Builders, entered into a *Residential Lease Agreement*[21] on April 27, 2020. Again, there is no record

in the AK Builders California Bankruptcy Case that AK Builders obtained bankruptcy court

approval to enter into the lease.

The Residential Lease Agreement provided, in part:

> 5. **USE OF PREMISES**. The Premises shall be used and occupied solely
> by Tenant and Tenant's immediate family, consisting of AK Builders (AL
> Vaituulala), exclusively, as a private single family dwelling. . . .[22]

Tenant is defined in the lease as "Al Vaituulala for AK Builders and Coatings (hereinafter

referred to as 'Tenant.'"[23]

Al, Jr. testified that he did not execute or authorize an electronic version of his signature to

be placed on the Residential Lease Agreement. The Court found Al, Jr.'s testimony—that he did

not execute or enter into the Residential Lease Agreement on behalf of AK Builders—not credible.

On the other hand, the Court found the testimony of Mr. Narinder Bains—the representative of

Defendant—to be credible on this issue. Additionally, Mr. Bains's testimony was corroborated by

(i) two rent checks in the amount of $2,100[24]—the rent due under the Residential Lease

Agreement—signed by Al, Jr. on behalf of AK Builders and made payable to Mr. Subodh

---

[21] D. Ex. 7.
[22] D. Ex. 7 at pg. 2 (parenthetical in original).
[23] D. Ex. 7 at pg. 1.
[24] D. Ex. 8.

Banerjee, the property manager for Defendant; (ii) the two rent checks were also reflected in the

May 2020[25] and June 2020[26] Monthly Operating Reports signed by Al, Jr. and filed in the AK

Builders California Bankruptcy Case (but the purpose of the checks was not disclosed); and (iii)

real property tax payments[27] for the Stacey Court Home were made on behalf of Defendant after

it acquired the Stacey Court Home at the foreclosure sale.

The Residential Lease Agreement terminated under its terms, but the Vaituulalas failed to

vacate the Stacey Court Home. Therefore, on or about November 21, 2022, Defendant initiated a

Texas state court eviction proceeding seeking to evict the Vaituulalas from the Stacey Court Home.

To prevent the trial in the eviction proceeding from going forward, Debtor filed her underlying

bankruptcy case and then the Complaint initiating this Adversary Proceeding.

### F.  Debtor ultimately vacated the Stacey Court Home and moved to Hawaii to live with her daughter

Debtor testified that, after Husband passed in December 2022, she was afraid to live alone

in the Stacey Court Home and could not take care of herself. Therefore, she moved to Hawaii to

live with her daughter. She testified further that she had no intention of returning to live alone in

the Stacey Court Home.

### III.    ANALYSIS

Debtor filed her Complaint against Defendant contending:

> i.  The Stacey Court Home is her homestead, and it was encumbered by Defendant
> without her knowledge;[28] and

---

[25] Cal. ECF No. 142 at pg. 10.
[26] Cal. ECF No. 143 at pg. 9.
[27] D. Ex. 12.
[28] Amended Joint Pre-Trial Order, Adv. ECF No. 33, pg. 1.

ii. The transfer of the Stacey Court Home to AK Builders was a "pretended sale" and is void under Texas Constitution Article XVI § 50(c). Consequently, AK Builders' subsequent transactions with Defendant, including the foreclosure sale of the Stacey Court Home, are void.[29]

Defendant denies Debtor's claims on the merits and asserts the following affirmative defenses:

- *Estoppel*—Defendant contends Debtor "is estopped from contending that the [Deed with Vendor's Lien] she signed and had notarized has no legal effect because she intended for the transaction to be a sham."[30]

- *Bona Fide Third-Party Lender Without Notice*—Defendant contends that it "was a bona fide lender that acquired its interest in the property in good faith, for value, and without notice of the claim or interest of the Vaituulalas."[31]

- *Equitable and Contractual Subrogation*—Defendant contends it is entitled to equitable and contractual subrogation for the funds it loaned and for its payment of property taxes and other costs incurred relating to the Stacey Court Home.[32]

- *Laches*—Defendant contends that, "[b]ecause [Defendant] has changed its position and because [Debtor] delayed asserting her claims until approximately three years since transferring the property, [Defendant] is entitled to the defense of laches."[33]

---

[29] Complaint, Adv. ECF No. 1, pg. 6 ¶ 30(a).
[30] Answer, Adv. ECF No. 17, pg. 3 ¶ 34.
[31] Answer, Adv. ECF No. 17, pg. 4 ¶ 42.
[32] Answer, Adv. ECF No. 17, pg. 5 ¶ 44.
[33] Answer, Adv. ECF No. 17, pg. 6 ¶ 51.

000089

Defendant also asserts counterclaims against Debtor "for fraud, misrepresentation, fraud by nondisclosure, negligent misrepresentation, conspiracy to commit fraud, and aiding and abetting AK Builders to fraudulently induce [Defendant] to make a loan to AK Builders."[34]

The Court will address each parties' claims, in turn.

## A.  Debtor's Claims

### 1.  Debtor contends that the Stacey Court Home is her Homestead

Debtor first contends that the Stacey Court Home was and is her homestead. It is well accepted that Texas law provides extremely broad protection for homesteads through the Texas Constitution and the Texas Property Code.[35]

The initial burden of proof falls on Debtor to "establish the character of the claimed property by showing a combination of both (1) overt acts of homestead usage, and (2) an intention to claim the property as a homestead."[36] This initial burden is typically a low hurdle, and, in the usual case, mere evidence of "overt acts of homestead usage" in the form of possession and usage of the property as a homestead is sufficient.[37] As more fully detailed above, Debtor satisfied this "low hurdle" by establishing that she and her Husband lived in the Stacey Court Home for many decades as their homestead prior to executing the Deed and Vendor's Lien on October 28, 2019.

Because Debtor has made a *prima facie* case in favor of homestead status, Defendant now "has the burden of demonstrating that [Debtor's] homestead rights have been terminated."[38]

---

[34] Answer, Adv. ECF No. 17, pg. 6 ¶ 52.

[35] *See* Tex. Const. art. XVI, § 50; Tex. Property Code Ann. § 41.001; *see also Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex. 1992). Statutes relating to homestead rights are to be liberally construed. *See Inwood N. Homeowners' Ass'n v. Harris*, 736 S.W.2d 632, 634–35 (Tex. 1987). "The Texas Constitution has long protected homeowners against the forced sale of their homesteads." *Paull & Partners Inv., LLC v. Berry*, 558 S.W.3d 802, 809 (Tex. App. 2018).

[36] *In re Brei*, 599 B.R. 880, 892–93 (Bankr. N.D. Tex. 2019).

[37] *Bradley v. Pac. S.W. Bank, FSB (In re Bradley)*, 960 F.2d 502, 507 (5th Cir. 1992) (internal citations and quotations omitted); *see also In re Comu*, 542 B.R. 371, 384 (Bankr. N.D. Tex. 2015).

[38] *Perry v. Dearing (In re Perry)*, 345 F.3d 303, 311 (5th Cir. 2003); *see also* FED. R. BANKR. P. 4003(c).

000090

Texas law provides that homestead rights "may be lost only through death, *abandonment* or *alienation*."[39] Consequently, the Court must determine if the Vaituulalas lost their homestead rights in the Stacey Court Home through abandonment or alienation when they entered into the transaction with AK Builders and executed the Deed with Vendor's lien.

Courts often fail to distinguish between abandonment and alienation as separate means of losing or extinguishing homestead rights in Texas.[40] "Abandonment requires cessation or discontinuance of the use of the property coupled with intent to abandon permanently the homestead. . . . Homestead status may be lost through alienation when the title to the property is transferred or conveyed to another, regardless of whether the grantor retains possession of the property."[41]

### a. Debtor Alienated her Homestead rights in the Stacey Court Home

Defendant argues that the Vaituulalas lost and extinguished their homestead rights in the Stacey Court Home by alienation when they conveyed it to AK Builders in the Deed with Vendor's Lien. Debtor responds contending that (i) she never intended to alienate her homestead rights when she executed the Deed with Vendor's Lien, and (ii) the Deed with Vendor's Lien constitutes a "pretended sale" and is void under the Texas Constitution[42] (addressed *infra*).

Subject to the Debtor's "pretended sale" argument (addressed *infra*), the Court finds and concludes that, up until the Vaituulalas executed the Deed with Vendor's Lien, the Stacey Court Home was, in fact, their homestead under Texas law. But, when the Vaituulalas conveyed the

---

[39] *Perry v. Dearing (In re Perry)*, 345 F.3d at 310 (emphasis added); *see also Paull & Partners Inv., LLC v. Berry*, 558 S.W.3d at 809 (quoting *In re Perry*, 345 F.3d 303, 310 (5th Cir. 2003)); *see also In re Comu*, 542 B.R. at 385. *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 160 (Tex. 2015)
[40] *Perry v. Dearing (In re Perry)*, 345 F.3d at 310, n. 8.
[41] *Id.* (internal citations omitted); *see also* Black's Law Dictionary (11th ed. 2019) (defines alienation as "[c]onveyance or transfer of property to another.").
[42] Tex. Const. art. XVI, § 50(c).

000091

Stacey Court Home to AK Builders, the Stacey Court Home lost its homestead character, even though the Vaituulalas continued to occupy the property after the conveyance to AK Builders.[43]

Under the clear and unambiguous terms of the Deed with Vendor's Lien, title to the Stacey Court Home vested in AK Builders as of October 28, 2019. Debtor's testimony that she did not understand the consequences of her voluntary decision to execute the Deed with Vendor's Lien is unavailing.

The Court finds and concludes that Debtor voluntarily alienated her homestead rights in the Stacey Court Home by executing the Deed with Vendor's Lien and conveying the property to Al, Jr.'s company, AK Builders. Accordingly, Debtor's claim that she did not alienate her homestead rights in the Stacey Court Home is without merit and is ***DENIED***.

### b. *Debtor Abandoned her Homestead rights in the Stacey Court Home*

Because the Court finds and concludes that the Vaituulalas alienated their ownership and homestead rights in the Stacey Court Home as of October 28, 2019, by agreeing to the transaction with AK Builders and executing the Deed with Vendor's Lien, the Court need not find if, or when, Debtor "abandoned" her homestead rights in the Stacey Court Home. With that said, by her own testimony, to the extent the Debtor had a homestead right in the Stacey Court Home, she abandoned any such potential homestead right upon moving to Hawaii to live with her daughter with no intent to return to the Stacey Court Home.

---

[43] *Perry v. Dearing (In re Perry)*, 345 F.3d at 311; *see also Paull & Partners Inv., LLC v. Berry*, 558 S.W.3d 802, 809 (Tex. App. 2018) ("[h]omeowners may lawfully convey their homestead to a corporation, even if they remain in the home after the sale, for purpose of obtaining a loan."); *Eckard v. Citizens Nat'l Bank in Abilene*, 588 S.W.2d 861, 862 (Tex.Civ. App.—Eastland 1979, writ ref'd n.r.e.) (homeowner could sell home to corporation so corporation could borrow money and put valid lien on property).

000092

Therefore, the Court finds and concludes that Debtor has abandoned whatever homestead right she may have had in the Stacey Court Home. Accordingly, Debtor's claim that the Stacey Court Home continues to constitute her homestead is **DENIED**.

### 2.    *Debtor contends that the Deed with Vendor's Lien is a void "Pretended Sale"*

Debtor next contends that the Deed with Vendor's Lien constitutes a void "pretended sale" under the Texas Constitution. The Texas Constitution provides that any sales deemed "pretended" also containing "any condition of defeasance" are void.[44]

"A 'pretended sale' is one in which the parties do not intend title to vest in the purchaser, but rather that title will be divested within a certain amount of time by paying the specified amount."[45] Therefore, to constitute a valid "pretended sale" under Texas law, the Debtor must establish (i) "a lack of intent to vest title"[46] and (ii) "the transfer involves a condition allowing the seller to reclaim title to the property after the loan is repaid[,]"[47] or said another way, the transfer must include "a condition of defeasance[.]"[48]

The party asserting a claim of "pretended sale" must provide credible evidence to satisfy both elements of the "pretended sale."[49] Based on the credible evidence in the record, the Court finds and concludes that Debtor failed to establish either element of a "pretended sale."

Although Debtor testified that she did not understand the consequences resulting from her execution of the Deed with Vendor's Lien, the Court finds that Debtor's testimony alone is insufficient to overcome the overwhelming evidence that suggests the Vaituulalas intended to

---

[44] Tex. Const. art. XVI, § 50(c); *see also State v. Forest Lawn Lot Owners Ass'n,* 152 Tex. 41, 48 (Tex. 1953).
[45] *Paull & Partners Inv.*, 558 S.W.3d at 810.
[46] *Paull & Partners Inv.*, 558 S.W.3d at 806.
[47] *Paull & Partners Inv.*, 558 S.W.3d at 810 and 813.
[48] *Paull & Partners Inv.*, 558 S.W.3d at 806.
[49] *Paull & Partners Inv.*, 558 S.W.3d at 810.

14

comply with Al, Jr.'s request by conveying the Stacey Court Home to AK Builders.[50] Additionally,

the overwhelming evidence established that (i) the Vaituulalas knew the conveyance of the Stacey

Court Home to AK Builders was being made so Al, Jr.'s business could obtain a loan from

Defendant; (ii) a title commitment was being issued by Chicago Title Insurance Company that AK

Builders was the fee simple owner of the Stacey Court Home under the Deed with Vendor's Lien;[51]

and (iii) the Vaituulalas voluntarily assigned the Vendor's Lien retained in the Deed with Vendor's

Lien to Defendant.[52]

Therefore, based on the credible evidence in the record, the Court finds and concludes that

Debtor failed to establish that she lacked the intent to vest title of the Stacey Court Home in AK

Builders when she executed the Deed with Vendor's Lien. Consequently, the Deed with Vendor's

Lien does not constitute a "pretended sale" rendered void by the Texas Constitution.

Even if Debtor was able to establish that she lacked the necessary intent to vest title of the

Stacey Court Home in AK Builders (to be clear, the Court does not so find), Debtor also failed to

establish that the Deed with Vendor's Lien was subject to a condition of defeasance. "A condition

of defeasance is a condition that permits the seller to reclaim title to the property after the [subject]

debt has been paid."[53]

Although the condition of defeasance need not be expressly stated in the conveyance

instrument itself, such a condition of defeasance must be implied or stated in a contemporaneous

document.[54] Other than Debtor's and Al, Jr.'s unpersuasive self-serving testimony, neither Debtor

---

[50] *Paull & Partners Inv.*, 558 S.W.3d at 811; *Adams v. First Nat'l Bank of Bells/Savory*, 154 S.W.3d 859, 870 (Tex. App.—Dallas 2005, no pet.) (a secret or undisclosed intent to convey title, or a subsequent change of intent, will not affect the validity of the conveyance).
[51] D. Ex. 10.
[52] D. Ex. 1.
[53] *Paull & Partners Inv.*, 558 S.W.3d at 813.
[54] *Paull & Partners Inv.*, 558 S.W.3d at 813; *see also Anglin v. Cisco Mortg. Loan Co.*, 135 Tex. 188, 141 S.W.2d 935, 941 (1940) (where express condition of defeasance not recited in the deed, "equity looks to all the circumstances preceding and attending the execution of the instrument[.]").

000094

nor Al, Jr. could point to any provision in the Deed with Vendor's Lien or any other contemporaneous document that expressly or impliedly provided for a condition of defeasance. Debtor could not point to any document that expressly or impliedly provided her with the right to compel AK Builders to convey the Stacey Court Home back to her once AK Builders satisfied the $125,000 Note to Defendant. Nor is there any credible evidence in the record to suggest that AK Builders made contemporaneous statements or put forth in any documents that AK Builders intended to reconvey the Stacey Court Home to the Vaituulalas once the $125,000 Note had been satisfied.

The only provision Debtor points to as a "condition of defeasance" is the retention by the Vaituulalas of the Vendor's Lien—of which they conveyed to Defendant. But a vendor's lien retained in a deed does not constitute a condition of defeasance.

Based on the credible evidence in the record, the Court finds and concludes that Debtor failed to establish that the Deed with Vendor's Lien was subject to a condition of defeasance. Consequently, the Deed with Vendor's Lien does not constitute a "pretended sale" rendered void by the Texas Constitution.

The Court finds and concludes that the transaction between the Vaituulalas and AK Builders evidenced by the Deed with Vendor's Lien does not constitute a "pretended sale" in violation of the Texas Constitution. Accordingly, Debtor's claim that the transfer of the Stacey Court Home to AK Builders was a "pretended sale" and is void under Texas Constitution Article XVI § 50(c) is without merit and is ***DENIED***.

16

## B.      Defendant's Affirmative Defenses

Because all of Debtor' claims against Defendant are denied on the merits, the Court need not address Defendant's affirmative defenses. Consequently, Defendant's affirmative defenses are **DENIED** as **MOOT**.

## C.      Defendant's Counterclaims

Based on the credible evidence in the record, and as fully addressed *supra*, the Court finds and concludes that the Vaituulalas conveyed title of the Stacey Court Home to AK Builders by the Deed with Vendor's Lien. The Court further finds and concludes that the Vaituulalas assigned the Vendor's Lien they retained in the Deed with Vendor's Lien to the Defendant. Additionally, the Court finds and concludes that (i) the Deed of Trust secured the $125,000 Note made by AK Builders to Defendant; and (ii) the April 7, 2020, foreclosure sale conveyed title of the Stacey Court Home to the Defendant.

Based on these findings and conclusions, the Court further finds and concludes that Defendant's counterclaims are moot.

Therefore, Defendant's counterclaims against Debtor are **DENIED** as **MOOT**.

## IV.      CONCLUSION

Each of Debtor's claims against Defendant fail and are **DENIED**.

Each of Defendant's affirmative defenses are **DENIED** as **MOOT**.

Each of Defendant's counterclaims against Debtor are **DENIED** as **MOOT**.

Consequently, the Court will enter a separate final judgment consistent with these Findings of Fact and Conclusions of Law.

### ### END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW ###

17

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS (FORT WORTH)

| | | |
|---|---|---|
| IN RE: | . | Case No. 22-42980-MXM-11 |
| | . | |
| MELE L. VAITUULALA, | . | Eldon B. Mahon U.S. Courthouse |
| | . | 501 West 10th Street |
| | . | Fort Worth, Texas 76102 |
| Debtor. | . | |
| . . . . . . . . . . . . . . . | . | |
| | . | |
| MELE L. VAITUULALA, | . | Adversary No. 23-04018-MXM |
| | . | |
| Plaintiff, | . | |
| | . | |
| vs. | . | |
| | . | |
| N AND K PROPERTIES, LLC, | . | |
| | . | |
| Defendant. | . | Thursday, February 1, 2024 |
| . . . . . . . . . . . . . . | . | 9:34 A.M. |

TRANSCRIPT OF TESTIMONY OF MELE VAITUULALA AND AL VAITUULALA
**BEFORE THE HONORABLE MARK X. MULLIN**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES:

For the Debtor:                 Charles R. Chesnutt, P.C.
                                BY: CHARLES R. CHESNUTT, SR., ESQUIRE
                                2608 Hibernia Street, Office 107
Dallas, TX 75204


For the Defendant:              Norred Law PLLC
                                BY: CLAYTON EVERETT, ESQUIRE
                                515 East Border Street, Suite 163
                                Arlington, Texas 76010

ECRO:                           Jeanette Almaraz

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**LIBERTY TRANSCRIPTS**
**9107 Topridge Drive**
**Austin, Texas 78750**
**Phone:  (847) 848-4907**
**E-mail:  DBPATEL1180@GMAIL.COM**
**Website:  www.libertytranscripts.com**

Case 23-04018-mxm   Doc 70   Filed 05/02/24   Entered 05/02/24 08:20:29   Desc Main
Case 4:24-cv-00295-O   Document 2-1   Filed 05/20/24   Page 46 of 99   PageID 162

2

# I N D E X

Page

WITNESSES:

FOR THE PLAINTIFF:

MELE VAITUULALA

    Direct Examination by Mr. Chesnutt                3
    Cross-Examination by Mr. Everett                  7
    Redirect Examination by Mr. Chesnutt              14

AL VAITUULALA
    Direct Examination by Mr. Chesnutt                15,31
    Cross-Examination by Mr. Everett                  21,32
    Redirect Examination by Mr. Chesnutt              30,35


FOR THE DEFENDANT:

(None)


EXHIBITS:                                            ID    EVD

FOR THE PLAINTIFF:

(None)

FOR THE DEFENDANT:

D-14     Deposition transcript of Mele Vaituulala    14      14

 1        (Requested testimony commenced at 9:59 a.m.)

 2            THE COURT:  All right.  Back to you, Mr. Chesnutt.

 3            MR. CHESNUTT:  I call Mrs. Vaituulala.

 4            THE COURT:  Vaituulala?

 5            MR. CHESNUTT:  Vaituulala.

 6            THE COURT:  All right.  So, Ma'am, you are -- I tell
 7  you what, why don't we -- she can stay there if that's okay.
 8  do you have any objection to that, Mr. --

 9            MR. EVERETT:  No objection.

10            THE COURT:  Okay.  Go ahead and take one of the
11  microphones and push it over.

12            MRS. VAITUULALA:  Thank you so much.

13            THE COURT:  All right.  And then just speak into the
14  microphone.  I'm going to go ahead and swear you in, all right?
15  Please raise your right hand.

16            MELE VAITUULALA, PLAINTIFF'S WITNESS, SWORN

17            THE COURT:  Thank you, Ma'am.

18            Mr. Chesnutt, it's back to you.

19                       DIRECT EXAMINATION

20  BY MR. CHESNUTT:

21  Q    And, Mrs. Vaituulala, do you remember signing one of those
22  documents, general warranty deed?  Is that your signature?

23  A    It is my signature.

24  Q    Okay.  Do you remember signing it?

25  A    I don't remember.  Just gave me the paper and I sign it.

M. Vaituulala - Direct                                4

1   I was so --

2   Q      Okay.

3   A      I never thought of something like this.

4            THE COURT:  Mr. Chesnutt, if I may ask, just so the

5   record's clear, when you said "this," what exhibit are you

6   referring to so that the record's clear?

7            MR. CHESNUTT:  Exhibit -- the general warranty deed

8   with (indiscernible).

9            THE COURT:  All right.  So that is Exhibit Number 2,

10  I believe?

11           MR. CHESNUTT:  Yes.

12           THE COURT:  Plaintiff's Exhibit 2.

13           MR. CHESNUTT:  Exhibit 2.

14           THE COURT:  All right.  I just wanted the record

15  clear.

16  BY MR. CHESNUTT:

17  Q      Now, Mrs. Vaituulala, did you ask anyone, ask your husband

18  if -- did you ask your husband what it was for?

19  A      (No audible response).

20  Q      No.

21           THE COURT:  Ma'am, you have to give a verbal response

22  because this is recorded.  So that's not --

23           THE WITNESS:  No.

24           THE COURT:  All right.  Thank you.

25           THE WITNESS:  It not -- I just, I grew up very poor,

                              M. Vaituulala - Direct                          5

 1   and nobody trust me for anything.

 2   BY MR. CHESNUTT:

 3   Q    Okay.

 4   A    It's just do whatever, you know.

 5   Q    All right.

 6   A    Forget about me.

 7   Q    All right.  And what happened?  Is your husband alive now?

 8   A    If my husband was alive now, this wouldn't happen.

 9   Q    Yeah.

10   A    This wouldn't happen to us.

11   Q    Okay.  He died?

12   A    (No audible response).

13   Q    Yes.

14   A    It's the cause of his death.

15   Q    Okay.

16   A    Worried about our home.

17   Q    Okay.

18   A    He has no sickness.

19   Q    I see.

20   A    Just (indiscernible).

21   Q    All right.  And what happened to your home after December

22   9th, I mean December 19th, 2019?  Was -- were any improvements

23   made to your home?

24   A    Yes.  We tried to do everything.  But I'm scared to go

25   back there.

                                                                      000101

Case 23-04018-mxm    Doc 70    Filed 05/02/24    Entered 05/02/24 08:20:29    Desc Main
Case 4:24-cv-00295-O    Document 21    Filed 05/06/24    Page 50 of 99    PageID 166

                            M. Vaituulala - Direct                          6

1  Q    Okay.

2  A    I just stay with my -- my daughter.

3  Q    Okay.  I understand.  I understand.  And what improvements

4  were made to your home?

5  A    Everything redone, the house.  And --

6  Q    Okay.

7  A    -- paint and everything.

8  Q    I see.

9  A    But I cannot live there because I don't know what this --

10 I was scared.

11 Q    I see.

12 A    Something might happen to me if I go there.

13 Q    I see.  So it's your testimony that you don't -- that you

14 did not understand what you signed and --

15         MR. EVERETT:  Objection, Your Honor.  This is a

16 leading question.

17         THE COURT:  Sustained.

18 BY MR. CHESNUTT:

19 Q    Okay.  Did you understand what you signed?

20 A    No.  I didn't know.

21 Q    I see.

22 Q    He just give me the paper to sign and I did it.  I didn't

23 know what it said.  I was so -- I'm sorry.  I was so dumb.

24         MR. CHESNUTT:  Okay.  Pass the witness.

25         THE COURT:  All right, Mr. Chesnutt.

Case 23-04018-mxm    Doc 70    Filed 05/02/24    Entered 05/02/24 08:20:29    Desc Main
Case 4:24-cv-00295-O    Document 2-1    Filed 05/06/24    Page 51 of 99    PageID 167

M. Vaituulala - Cross                                            7

1              Mr. Everett?

2              THE WITNESS:  I'm sorry.

3                         CROSS-EXAMINATION

4   BY MR. EVERETT:

5   Q    Ms. Vaituulala, is this the only document that you signed

6   with respect to Stacey Court regarding this transaction?

7   A    I think so.

8              MR. EVERETT:  May I approach the witness?

9              THE COURT:  Yes, you may.  Thank you.

10  BY MR. EVERETT:

11  Q    What I've opened up in front of you is Defendant's Exhibit

12  Number 11.  And you will need your glasses because the print is

13  very small.  Have you ever seen this document before?

14  A    No.

15  Q    Can you turn to Page 2 of this document?  Do you see the

16  signatures down at the bottom?

17  A    Oh, yes.

18  Q    Do you recognize those signatures?

19  A    I think it look like my signature.

20  Q    I'm having a little trouble hearing you.  Did you

21  recognize your signature on this page here?

22  A    It's kind of weird looking.  But I cannot tell you.

23  Q    You can't tell me whether or not that is your signature.

24  Is that your testimony?

25  A    Oh my God.

000103

M. Vaituulala - Cross                          8

1        (Pause)

2               THE WITNESS:  What is this paper?  What is this paper

3   from?

4               THE COURT:  Mr. Chesnutt?  Yeah.

5               Ma'am, he can't talk to you while you're testifying.

6   So if you -- no, that's okay.  No, I understand.  So just

7   answer Mr. Everett's questions.  If you don't know the answer,

8   or you're unclear, just talk to Mr. Everett.  And then when

9   Mr. Everett's done, Mr. Chesnutt will have a chance to ask

10  questions.  But -- all right.

11              So, Mr. Everett, back to you.

12              MR. EVERETT:  Yes.

13  BY MR. EVERETT:

14  Q    So on Exhibit Number 11, do you recognize any of the

15  signatures that are on that page?

16  A    Yes.  I recognize it.

17  Q    Okay.  Tell me what signatures you recognize.

18  A    I think that's my signature.

19  Q    Okay.  Do you recognize anyone else's signature on that

20  page?

21  A    No, I don't.

22              MR. EVERETT:  May I approach, Your Honor?

23              THE COURT:  Of course.

24       (Counsel confer briefly)

25  BY MR. EVERETT:

000104

Case 23-04018-mxm    Doc 70    Filed 05/02/24    Entered 05/02/24 08:20:29    Desc Main
Case 4:24-cv-00295-O    Document 21    Filed 05/06/24    Page 53 of 99    PageID 169

M. Vaituulala - Cross                                      9

1  Q     Now, Mrs. Vaituulala, I have put beside Exhibit 11

2  Plaintiff's Exhibit Number 2, I believe, which is the general

3  warranty deed.  Now, do the -- does your signature look similar

4  in the two documents?

5  A     Yes.

6  Q     And does Alfred's signature look similar in both the

7  documents?

8  A     (No audible response)

9  Q     Do you have an answer to that question?

10  A     I don't.

11  Q     Are you familiar with your husband's signature?

12  A     I don't know.  He just -- I grew up very poor, and he

13  didn't give me anything.

14  Q     Okay.  Now, did you graduate from high school?

15  A     Yes.  In the island.

16  Q     Okay.

17  A     In Tonga.

18  Q     In Tonga?

19         THE COURT:  Ma'am, if you'd pull the microphone up a

20  little closer?  We're just -- I'm having a hard time hearing

21  you.  So try to speak up as much as you can.  Thank you.

22  BY MR. EVERETT:

23  Q     And do you remember when we had our deposition and I asked

24  you similar questions?  Do you remember that?

25  A     I don't remember.

M. Vaituulala - Cross                                    10

1  Q    Do you remember meeting me before?

2  A    I think so.

3  Q    Okay.

4  A    But the time, I don't remember.

5  Q    Now, at your deposition, you testified that you worked for

6  the Tonga government for two, maybe five years.  Do you recall

7  that?

8  A    Yes.

9  Q    Okay.  And what kind of work did you do for the Tonga

10 government?

11 A    I used to be the Prime -- to secretary to the Premier of

12 Tonga.

13 Q    Okay.  And you worked there until you were married to

14 Alfred.  Is that correct?

15 A    Yes.

16 Q    Now, did you ever receive any letters or correspondence

17 from AK Builders, any notices about 2005 Stacey Court?

18 A    No.  I don't.  I don't remember anything.

19 Q    Are you aware of AK Builders Coatings and Inc.?

20 A    I think it's my son's company.

21 Q    Would it surprise you to learn that AK Builders Coating

22 claimed to own 2005 Stacey Court?  Would that surprise you?

23 A    I was shock.

24 Q    Do you ever recall receiving something in the mail that

25 was -- that said something similar?

000106

M. Vaituulala - Cross                               11

1   A    I really don't know because my daughter who took care of

2   me just received my mail and everything like that.  I suffer

3   with meningitis bacteria that I don't remember anything.

4            MR. EVERETT:  May I approach, Your Honor?

5            THE COURT:  Yes, you may.

6   BY MR. EVERETT:

7   Q    Now, what I've sat in front of you is your deposition

8   transcript from November the 15th of last year.  Do you see on

9   Page 23, the question I asked you at Line 7?

10  "Q    Would it surprise you to learn that AK Builders & Coating,

11  Inc. claimed to own the property located at 2005 Stacey Court?"

12  A    I was shock.

13  Q    And what did you answer to that question?  It's here on --

14  it starts on Line 10.

15  A    I really don't know what happened.

16  Q    I know.  But I'm asking you what you answered at your

17  deposition.  Can you read Line 10 through 12?

18  A    10 to 12?  Yeah.

19       (Pause)

20  BY MR. EVERETT:

21  Q    Can you read it for the Court?

22  A    "I think I receive a letter or something, and I just

23  ignore it because I don't know what is going on.  I never have

24  that before."

25  Q    And then I ask you, "What letter did you receive?  What

M. Vaituulala - Cross                                12

1    are you referring to?" And what was your answer there?

2    A    I really don't remember because --

3    Q    No. I'm asking you what you testified at your deposition.

4    So starting on Line 5. Can you read that, Line 5? 15 through

5    17, I mean.

6    A    Just the address that AK Builders send to my address to

7    the house where I live."

8    Q    And when I asked you what you did with that, did you

9    testify that you threw it away?

10   A    I threw it away. I'm sorry. I don't know what is it for.

11   Q    Now, at the time of our deposition, I asked you where you

12   lived. And you told me you lived in Maui. Do you recall that?

13   A    Yes.

14   Q    Do you currently live in Maui?

15   A    I -- I sick, and I do not live by myself. So my daughter

16   in Maui took me over to Maui. And I'm still in Maui up to

17   today.

18   Q    Okay. And then do you recall telling me that you no

19   longer have any connection with 2005 Stacey Court?

20   A    I have what?

21   Q    Do you recall telling me at your deposition that you have

22   no connection with the property located at 2005 Stacey Court?

23   A    I'm scared to go back there because I live by myself. And

24   I'm not healthy. So my daughter said she will take care of me

25   in Maui.

000108

M. Vaituulala - Cross                                    13

1  Q    When you come to Texas, where do you stay?  When you visit

2  Texas, where do you stay?

3  A    When I went to Texas, I -- oh, my gosh.  I forgot the

4  name.  I hardly go to Texas.

5  Q    You hardly -- I'm sorry.  You hardly go to Texas.  Is that

6  what you stated?

7  A    Yes.

8  Q    Okay.  And when you do, do you stay with someone?

9  A    I stay with my relatives.

10         MR. EVERETT:  Okay.  No further questions, Your

11  Honor.  Oh, I would like to move to admit the deposition

12  transcript.

13         THE COURT:  Any objection?

14         MR. CHESNUTT:  I'm sorry, what?

15         MR. EVERETT:  I want to admit the deposition

16  transcript.

17         MR. CHESNUTT:  You want to what?

18         MR. EVERETT:  Admit the deposition transcript.

19         MR. CHESNUTT:  Oh, yes.  No objection.

20         THE COURT:  All right.  Has it been marked?

21         MR. EVERETT:  No.

22         THE COURT:  All right.  The entirety, or just the

23  portion that was read?

24         MR. EVERETT:  Just the portions that she testified

25  to.

000109

Vaituulala - Redirect                               14

1          THE COURT:  All right.  So the Court will mark this

2    then as Exhibit Defendant's 14.  And it will be admitted solely

3    for the portions that Mr. Everett read and referred to in his

4    direct -- or his cross-examination, excuse me.

5          MR. EVERETT:  Thank you, Your Honor.

6        (Defendant's Exhibit 14 marked for identification and

7    admitted into evidence)

8          THE COURT:  All right.  Any redirect of this witness?

9          MR. CHESNUTT:  Just a couple of questions.

10         THE COURT:  Of course.

11                      REDIRECT EXAMINATION

12   BY MR. CHESNUTT:

13   Q    Now, Mrs. Vaituulala, when he asked you if you remembered

14   the letter that you received, what do you remember about that

15   letter?  What did you see about that letter?

16   A    I was shock.

17   Q    You don't remember?

18   A    I don't -- I couldn't think anything like that happen to

19   me.

20   Q    Okay.  All right.  And if you --

21                          (Pause)

22         MR. CHESNUTT:  No further questions.

23         THE COURT:  All right.  Thank you, Mr. Chesnutt.

24         Any recross on that?

25         MR. EVERETT:  No recross, Your Honor.

Case 23-04018-mxm   Doc 70   Filed 05/02/24   Entered 05/02/24 08:20:29   Desc Main
Case 4:24-cv-00295-O   Document 2-1   Filed 05/06/24   Page 59 of 99   PageID 175

A. Vaituulala - Direct                              15

 1              THE COURT:  All right.  Thank you, Ma'am.  You're

 2    excused as a witness.  I appreciate your testimony.

 3              MR. CHESNUTT:  Okay.

 4              THE WITNESS:  Thank you.

 5         (Witness excused)

 6              MR. CHESNUTT:  Now I'll call Al Vaituulala.

 7              THE COURT:  All right.  Please come forward, sir.

 8              Please raise your right hand, sir.

 9               AL VAITUULALA, PLAINTIFF'S WITNESS, SWORN

10              THE COURT:  Thank you, sir.  You may have a seat

11    right over here.

12                         DIRECT EXAMINATION

13    BY MR. CHESNUTT:

14    Q    Mr. Vaituulala, I'll take you back to December of --

15    December 17th of 2019 when the deed of trust was signed, and

16    October 28th, 2019 when the general warranty deed was signed.

17    Do you recollect -- do you recollect these documents?

18    A    Yes, I do.

19    Q    Okay.  Where were they signed?

20    A    They were signed at a title company that was picked out by

21    the lender.

22    Q    Okay.

23    A    In Bedford.

24    Q    Okay.  And did the lender, okay, choose -- scratch that.

25    Did the lender see both of these documents?

Case 23-04018-mxm   Doc 70   Filed 05/02/24   Entered 05/02/24 08:20:29   Desc Main
Case 4:24-cv-00295-O   Document 2   Filed 05/06/24   Page 60 of 99   PageID 176

A. Vaituulala - Direct                                16

1    A    They weren't there.

2    Q    Huh?

3    A    The lenders weren't there.  It was just done by the title

4    company that they hired.

5    Q    Right.

6    A    Yeah.

7    Q    And do you know if the lender saw the documents

8    afterwards?

9    A    Yes, of course.

10   Q    Okay.  And the lender signed -- the lender saw the deed of

11   trust?

12   A    Yes.

13   Q    Okay.  And what does -- does the deed of trust appear to

14   you to be a normal deed of trust?

15   A    (No audible response).

16   Q    Are there provisions in there that are not, you know, that

17   are not normal?

18   A    Yes.  Yeah, there's --

19   Q    Okay.

20   A    Yeah.

21   Q    For instance?

22   A    The loan amount.

23   Q    Yes.

24   A    The interest.

25   Q    Okay.  There is a provision for payment of the taxes.  Is

Case 23-04018-mxm   Doc 70   Filed 05/02/24   Entered 05/02/24 08:20:29   Desc Main
Case 4:24-cv-00295-O   Document 21   Filed 05/06/24   Page 61 of 99   PageID 177

A. Vaituulala - Direct                                      17

1   there -- and is there a provision for -- well, let me go

2   through this.

3            "Beneficiary's rights.  If the proceeds of the note

4            are used to pay any debt secured by prior lien,

5            (indiscernible) subrogate to the rights.  Beneficiary

6            may apply any proceeds.  If grantor fails to perform

7            any of the grantor's obligations, the beneficiary may

8            perform these obligations and be reimbursed by the

9            grantor.

10           "If the grantor defaults on the note, or fails to

11           perform any of the grantor's obligations, or if the

12           default occurs in a prior lien note or instrument and

13           the time in which it must be cured as may be required

14           by law written by the beneficiary."

15       Now, look at the provisions of the grantor.

16           "Keep the property in good condition.  Grantor shall

17           cause or permit presence or disposal -- or use of

18           disposal.  Maintain the form as acceptable.  Comply

19           at all times with the requirements of 80 percent of

20           the co-insurance clause, co-insurance clause."

21       Are you -- did your mother comply with these?  To your

22   knowledge, did your mother comply with the codes, or with the

23   warranty deed?

24   A    We kept up the property, yes.

25   Q    Okay.  And did -- and does the warranty deed contain a

Case 23-04018-mxm   Doc 70   Filed 05/02/24   Entered 05/02/24 08:20:29   Desc Main
Case 4:24-cv-00295-O   Document 21   Filed 05/06/24   Page 62 of 99   PageID 178

A. Vaituulala - Direct                      18

1  condition of defeasance, and that's a condition of defeasance,

2  that is a condition that reverses the warranty deed if it was

3  paid.  Now, does it contain a condition of defeasance?

4  A    Can you say that again?

5  Q    Do you not understand?

6  A    No.

7  Q    Do you not --

8  A    No.

9  Q    Do you not -- okay.

10        MR. CHESNUTT:  Okay.  Let me suggest that the

11  warranty deed does contain a condition of defeasance.  And I'll

12  permit it speak for itself.

13  BY MR. CHESNUTT:

14  Q    Now, Mr. Vaituulala, did you make any improvements or

15  changes to the property after December 19th?

16  A    Yes.  Matter of fact, we made changes after the

17  foreclosure, also.

18  Q    Okay.

19  A    Yeah.

20  Q    What were they?

21  A    We -- the plumbing.  We did new plumbing at the house.  We

22  put a new roof at the house.  But I had -- I had the

23  authorization from -- from Soboda (phonetic) with N and K

24  Properties.

25  Q    Okay.

A. Vaituulala - Direct                              19

1  A    So we put a new roof on that was almost $30,000.

2  Q    Okay.  Where else?

3  A    The plumbing was about 4,400 bucks.  But I didn't want

4  them to demolition the floor.  So I had to rerun the plumbing

5  on the wall to the ceiling.  And so it would be cheaper.  It

6  was 4,400 because -- and then we redid the carpeting.

7       We -- because the plumbing, there was water all over the

8  house.  And then we put in the panel box, new A/C unit for my

9  parents' side for their master bedroom.  And then we -- we

10 fixed the A/C also.  There's two central -- there's two air

11 conditioning units --

12 Q    Okay.

13 A    -- in the house.

14 Q    And when did the -- when did you do this?

15 A    We did that in the end of 2021 to 2022.

16 Q    Okay.  Do you remember when the foreclosure took place?

17 A    I think in 2021.

18 Q    2021?

19 A    Yes.

20 Q    Okay.  Now, and it took place in December, I mean in May

21 of 2021.  Is that right?

22 A    Correct.

23 Q    And you hired me to attend a --

24 A    In 2022, yes.

25 Q    2022?

A. Vaituulala - Direct                    20

1   A    Right.

2   Q    All right.  So it was foreclosed in 2021.

3   A    Yes.

4   Q    And in 2022, in December of 2022, 18 months later --

5   A    Right.

6   Q    -- there was a proceeding to evict --

7   A    Correct.

8   Q    -- Mrs. Vaituulala.  And you hired me to go to that?

9   A    Yes.

10  Q    Now, did you have any discussions with the -- with Mr. --

11       UNIDENTIFIED SPEAKER:  Narinder Bains.

12  Q    Bains?

13  A    Many times.

14  Q    Many times?

15  A    Yes.

16  Q    Did you discuss with him this particular deal?

17  A    Yes.

18  Q    Okay.  And when did you -- when you first spoke to him --

19  no, no.  Scratch that.

20       When you -- taking you back to the time that you generally

21  spoke to him first, was he aware that this was a homestead?

22  A    Of course.  They -- they know it's a homestead.  They do a

23  lot of business here in Texas.

24  Q    Okay.

25  A    Yeah.  They're very familiar with it.


**WWW.LIBERTYTRANSCRIPTS.COM**

1  Q    Okay.

2  A    I know they have a lot of buildings and homes here in

3  Texas that they want me to look at.  Yeah.

4  Q    He was aware it was a homestead?

5  A    Yes.

6  Q    Okay.  And he was aware it was in Texas?

7  A    Yes.

8            MR. CHESNUTT:  Okay.  Pass the witness.

9            THE COURT:  All right.  Thank you, Mr. Chesnutt.

10           Mr. Everett?

11                      CROSS-EXAMINATION

12  BY MR. EVERETT:

13  Q    Good morning, Mr. Vaituulala.

14  A    Good morning.

15           MR. EVERETT:  May I approach?

16           THE COURT:  Of course.

17  BY MR. EVERETT:

18  Q    I want to go through a timeline here because I think that

19  there may be some confusion about exactly when things happened.

20  So let's start with, in my defendant's exhibit book, Number 2.

21  Let me know when you're there.

22       Do you recognize that document?

23       (Pause)

24           THE WITNESS:  Yes.

25  BY MR. EVERETT:

Case 23-04018-mxm   Doc 70   Filed 05/02/24   Entered 05/02/24 08:20:29   Desc Main
Case 4:24-cv-00295-O   Document 21   Filed 05/20/24   Page 66 of 99   PageID 182

A. Vaituulala - Cross                                  22

 1  Q    Okay.  And on Page 2 of that document, does that appear to

 2  be your signature?

 3  A    No.  That's not my signature.

 4  Q    Do you recognize that signature?

 5  A    It's my father.

 6  Q    And where would this signature have been taken place?

 7  Were you present when this -- when this was signed?

 8  A    I was present, yeah, at the title company that was ordered

 9  by the N and K Properties.

10  Q    And who is AK Builders and Coatings, Inc.?

11  A    AK Builders is my company in California.

12  Q    Okay.

13  A    Yeah.

14  Q    Is -- are you -- who owns AK Builders?

15  A    I do.

16  Q    Okay.  Now, this real estate lien, though, is made by AK

17  Builders and Coatings, Inc.  Do you dispute that?

18  A    This was filled out by the title company.

19  Q    Okay.

20  A    Yeah.  The title company filled this out.

21  Q    Sharon B. Smith (phonetic)?

22  A    Correct.

23  Q    Was she the person you met with?

24  A    Yes.

25  Q    Okay.  And why would your father be signing a document on

000118

A. Vaituulala - Cross                                        23

1  behalf of AK Builders and Coatings, Inc.?

2  A    I guess that's what Sharon filled out.  I don't know that

3  my father's signature should be on it.

4  Q    Okay.

5  A    They're just signing what Sharon provided.

6  Q    Okay.  Let's turn to Exhibit Number 3, Plaintiff's -- or,

7  I mean, I'm sorry, Defendant's Exhibit Number 3.  Now, take a

8  look at that document.  I think it's five pages.

9  A    Two pages?

10 Q    Five pages.

11 A    Five pages.

12 Q    Exhibit 3.  It's titled "Deed of Trust."  And I believe

13 you and Mr. Chesnutt were discussing the deed of trust just a

14 few moments ago.

15 A    This is Exhibit 3, right?  There's only two pages.

16         MR. EVERETT:  May I approach?

17         THE COURT:  Yes.

18 BY MR. EVERETT:

19 Q    Okay.  Do you see on the final page of this document a

20 signature?  Under AK Builders and Coatings, Inc.?

21 A    Yes.

22 Q    Okay.  And whose signature do you see there?

23 A    My signature is on this.

24 Q    So this signature appears to be your signature, correct?

25 A    Yes.

000119

A. Vaituulala - Cross                    24

1  Q    And then when you flip back to Exhibit Number 2, you're

2  saying that signature is not yours, but that's your father's?

3  A    Yes.

4  Q    Now, if you compare the two signatures side-by-side by

5  bending over the page, it looks very similar.  Do you and your

6  father have very similar signatures?

7  A    No.  It's way different.  That's not similar.

8  Q    Okay.  So it's your testimony that Exhibit Number 2 is

9  signed by your father on behalf of AK Builders, and Exhibit

10 Number 3 is signed by you on behalf of AK Builders.  Is that

11 right?

12 A    That's what was provided by the title company.

13 Q    Okay.  Now, you mentioned that the property was foreclosed

14 in 2021.  Is that correct?

15 A    Yes.

16 Q    Wasn't it in fact actually foreclosed in 2020, in April of

17 2020?

18 A    I don't remember.

19 Q    Okay.

20 A    Yeah.

21 Q    Well, let's see if the documents will jog your memory.

22 Let's turn to Document Number -- Defendant's Document Number 5

23 in the book.  Number 5.

24      Do you see the title of this document, "Notice of

25 Foreclosure Sale?"

000120

A. Vaituulala - Cross                    25

1   A    Yes.

2   Q    Okay.  And the date was March 17th, 2020.  Is that

3   correct?

4   A    Yes.

5   Q    And it has a Tarrant County filing stamp of March 17th,

6   2020?

7   A    March 17th, yes, 2020.

8   Q    Okay.  And then on Defendant's Exhibit 6, there's a

9   substitute trustee's deed.  Do you see that document?

10  A    Yes.

11  Q    Now, according to this document that this is a trustee's

12  deed transferring the property 2005 Stacey Court to N and K

13  Properties based on the foreclosure.  And it's dated

14  April 21st, 2020.  Do you see that?

15  A    Yes.

16  Q    Now, what steps did AK Builders take to -- when they got

17  notice of the foreclosure?

18  A    During that time, we had a Chapter 11 in California for AK

19  Builders.

20  Q    Okay.

21  A    And we gave him our -- I gave Narinder a copy of our

22  Chapter 11.  And then -- but I was going to refinance the loan.

23  But that broker was going to refinance the loan using my --

24  just on my personal credit.  But then they -- they were

25  supposed to refinance within -- within 30 days after this loan

Case 23-04018-mxm   Doc 70   Filed 05/02/24   Entered 05/02/24 08:20:29   Desc Main
Case 4:24-cv-00295-O   Document 2   Filed 05/06/24   Page 70 of 99   PageID 186

A. Vaituulala - Cross                    26

 1  so we can pay them off because the interest on the 125,000 was

 2  10,000 a month.  Okay?  As you can see, it was 145.  But I was

 3  supposed to pay him off in three months for 155,000.

 4      So that broker was supposed to refinance the loan.  But

 5  they kept dragging.  We were in April to they kept telling me

 6  oh, do this, do this.  But I was qualified to do a loan and pay

 7  him off.  But they -- they just -- Jim, the broker, was just

 8  dragging, and we weren't able to do it on time.  And I thought

 9  everything was fine.  And then they foreclosed it.

10  Q    Okay.  You mentioned that AK Builders had filed a Chapter

11  11 bankruptcy case.  Is that correct?

12  A    Yes.

13  Q    And did AK Builders list ownership interest in 2005 Stacey

14  Court in its bankruptcy documents?

15  A    We list it.  Yeah, we list everything that was supposed to

16  be.  Yeah.

17  Q    And is it in fact true that AK Builders claimed to own

18  2005 Stacey Court?

19  A    Yes.  Yeah.

20  Q    And on its bankruptcy schedules, is it true that AK

21  Builders stated that the nature and extent of its interest in

22  2005 Stacey Court was 100 percent interest?

23  A    Yes.

24  Q    Now, after the foreclosure, did you -- did AK Builders

25  enter into a lease agreement to lease the property?

A. Vaituulala - Cross                          27

1  A     Yes.

2  Q     Okay.  And AK Builders, in fact, wrote checks.  Is that

3  correct?

4  A     Yes.

5  Q     For payment of rent?

6  A     And the property tax.

7  Q     Okay.

8  A     Yeah.

9  Q     So let's turn to Exhibit -- Defendant's Exhibit Number 7,

10 please.

11 A     Exhibit what?

12 Q     Exhibit, Defendant's Exhibit 7.

13 A     7.

14 Q     Do you recognize this document?

15 A     Yes.

16 Q     And on the last page of this document, is that your

17 signature?

18 A     We never signed the lease.  Somebody made that up.  That's

19 forgery right there because we never had a lease.

20 Q     Okay.

21 A     Yeah.  That's forgery right there.  Yeah.  I don't know.

22 You can see --

23 Q     You've never seen a lease, this lease document?

24 A     No.

25 Q     I thought you told -- your testimony just a minute ago was

                              A. Vaituulala - Cross                    28

 1    that you entered into a lease agreement?

 2    A    Verbally.

 3    Q    A verbal lease agreement?

 4    A    Yes.  We never signed.  That's somebody signed my name on

 5    that, Your Honor.

 6    Q    What was the terms of the oral lease?

 7    A    Twenty-one hundred a month.

 8    Q    Okay.  Now, that in fact is the rent -- you paid some of

 9    those rent payments.  Is that correct?

10    A    Yes.

11    Q    And those rent payments came from AK Builders Inc.'s

12    checkbook, correct?

13    A    Yes.  Some of it came from AK Builders.  And some of it

14    came from my personal.

15    Q    Okay.

16    A    And also, a check for 8,000 for property tax.

17    Q    Do you have a copy of that check with you?

18    A    Yes, I do.

19    Q    Okay.

20    A    And then we traded work in California, also, for --

21    Q    Now, you stated earlier that --

22    A    Wow.

23    Q    -- that N and K Properties does business in Texas?

24    A    Of course.

25    Q    What other properties does N and K own in Texas?

A. Vaituulala - Cross                               29

```
 1   A     Somewhere near Texarkana.  There's a -- I have to look
 2   back in my message from them to --
 3   Q     Okay.
 4   A     Properties.
 5   Q     What makes you believe that N and K Properties does
 6   business in Texas?
 7   A     Because they gave me addresses to go look at properties
 8   here and see what I think about it.
 9   Q     Okay.  And did -- how did you find N and K Properties to
10   become AK Builders' lender?
11   A     It was Jim.  Jim does a lot of business with them.  Jim
12   Pusateri, he's -- he's the broker and Narinder.  They both work
13   together.  They --
14   Q     And why didn't you do traditional financing at the start
15   to get the loan for AK Builders?
16   A     It was Jim recommendation to do this and then get a
17   conventional loan after.
18   Q     Okay.
19   A     Yeah.
20   Q     Did you seek to try to buy the property back, you or AK
21   Builders try to buy the property back from the foreclosure?
22   A     Yes.
23   Q     Is that correct?  And what became of those attempts?
24   A     They wanted us -- they wanted me to pay 350,000 for the
25   property.  And they said that they were going to put up 20
```

Case 23-04018-mxm    Doc 70    Filed 05/02/24    Entered 05/02/24 08:20:29    Desc Main
Case 4:24-cv-00295-O    Document 2-1    Filed 05/30/24    Page 74 of 99    PageID 190

A. Vaituulala - Redirect                                    30

1    percent for the down payment.  But when we -- when we got

2    close, everything was approved, they backed out of it.

3        And then they wanted to put a $350,000 lien on the

4    100-acre property that I have in California.  But then I

5    learned from this not to get him involved in that other

6    project.  So I didn't -- I didn't allow them to put the lien,

7    the $350,000 loan on the 100 acre that we own.

8    Q    When you got notice of the foreclosure, did you try to

9    stop the foreclosure?

10   A    No.  I was talking to Soboda and Narinder and they said

11   everything was fine.  So you know, I thought everything was

12   good because I was doing work for them in California.  Yeah.

13             MR. EVERETT:  No further questions.  Thank you.

14             THE WITNESS:  Okay.  Thank you.

15             THE COURT:  All right.  Thank you, Mr. Everett.

16             Mr. Chesnutt?

17                     REDIRECT EXAMINATION

18   BY MR. CHESNUTT:

19   Q    Can you tell us how much money you put into the property

20   after April of 2020?

21   A    Okay.  About $46,000.

22   Q    Forty-eight thousand?

23   A    Yeah.

24             MR. CHESNUTT:  Thank you.  And, let's see.  No

25   further questions.

A. Vaituulala - Direct                                31

1          THE COURT:  All right.  Thank you.

2          Any redirect on that?

3       (No audible response)

4          THE COURT:  All right.  Thank you, sir.  You may step

5  down as a witness.

6       (Recess at 10:51 a.m./Reconvened at 11:49 a.m.)

7          MR. CHESNUTT:  Your Honor, we'll call Mr. Vaituulala.

8          THE COURT:  All right.  Please come forward again,

9  sir.  And again, since we've had an intervening witness, I'll

10  go ahead and re-swear you in.

11          All right.  Sir, please raise your right hand.

12          AL VAITUULALA, PLAINTIFF'S WITNESS, SWORN

13          THE COURT:  Thank you, sir.  You may have a seat.

14                       DIRECT EXAMINATION

15  BY MR. CHESNUTT:

16  Q   Mr. Vaituulala, I turn your attention to Exhibit Number 7

17  and ask if you've ever seen that document.

18  A   No.

19  Q   Okay.  And to the last page of that, is that your

20  signature?

21  A   I did sign this, yeah.

22  Q   Okay.

23  A   That is my -- a copy of my signature.

24  Q   Okay.

25  A   Yes.

A. Vaituulala - Cross                              32

1  Q    But you didn't sign it?

2  A    No.

3  Q    Okay.  When the -- when the loan was made, who was paid?

4  A    AK Builders was paid 107,000 out of the 125,000.

5  Q    Okay.  Did you find that to be unusual?

6  A    They took out 15,000 for Narinder and Jim from the 125.

7  Q    Okay.

8  A    Yes.

9  Q    Did you find that the --

10 A    Yes.  It's way too much.

11        MR. CHESNUTT:  Okay.  Pass the witness.

12        THE COURT:  All right.  Thank you.  Any cross-

13 examination?

14        MR. EVERETT:  Yes.  Thank you.

15                    CROSS-EXAMINATION

16 BY MR. EVERETT:

17 Q    What's your basis for understanding that AK Builders was

18 paid at the closing of this property?

19 A    The check was made out to AK Builders.

20 Q    Okay.  Do you have a copy of that check?  Is it here?  Did

21 you bring that copy of that check?

22 A    No.

23 Q    Why would the settlement statement state something

24 different than what you're telling me in this court?

25 A    The fact is the check was made to AK Builders.

Case 23-04018-mxm    Doc 70    Filed 05/02/24    Entered 05/02/24 08:20:29    Desc Main
Case 4:24-cv-00295-O    Document 2-1    Filed 05/06/24    Page 77 of 99    PageID 193

A. Vaituulala - Cross                                        33

 1   Q    So are you suggesting that the settlement statement is a

 2   forgery?

 3   A    The settlement --

 4   Q    Do you have the book in front of you?

 5   A    I don't know if it's a forgery.  But that's what the title

 6   company provided us.

 7   Q    Okay.  Do you see Exhibit 11?

 8   A    11.

 9   Q    Were you at the closing?

10   A    Yes.

11   Q    Okay.  Do you recall seeing this settlement statement at

12   the closing?

13   A    No.  I don't remember this statement.

14   Q    Okay.  Do you see up at the top that the borrower is AK

15   Builders and Coatings, Inc.  Do you see that?  Yeah, the font

16   is very small.  I apologize.

17   Q    Which one are you talking about?

18   A    At the top, I'm asking you who is listed as the borrower

19   on this settlement statement.

20   A    AK Builders.

21   Q    All right.  And who was listed as the seller?

22   A    Alfred and Mele Vaituulala.

23   Q    And who is listed as the lender?

24   A    N and K Properties.

25   Q    Okay.  Now if you look at the second column all the way

A. Vaituulala - Redirect                        34

1   down at the bottom, it's numbered 603, it says "cash to the

2   seller."  Do you see that?

3   A      Yes.

4   Q      And it says 107 to the seller.

5   A      Uh-huh.

6   Q      All right.  And then on the next page, do you see

7   signatures?

8   A      Yes.

9   Q      Is your signature signed under AK Builders and Coatings,

10  Inc.?

11  A      Yes.

12  Q      And is that your father, Alfred Vaituulala's signature?

13  A      Yes.

14  Q      And is that your mother's signature?

15  A      That's my mother's signature.

16  Q      And there's even a certification by the settlement agent.

17  Do you see that?

18  A      Yes.

19  Q      Sharon B. Smith?

20  A      Yes.

21  Q      And she certified that she has cause the funds to be

22  disbursed in accordance with this statement.  And you're

23  telling the Court that that's not true.  Is that correct?

24  A      That's correct.  The check, it came to AK Builders.

25  Q      And you don't have a copy of that check.  And have you

000130

A. Vaituulala - Redirect                    35

1  provided that check to your -- to the attorney?

2  A    I thought everything was sent from Sharon to my attorney

3  already.

4  Q    Is it possible that the money was given to your parents

5  and they turned the money over to you?

6  A    No.

7  Q    Why is that not possible?

8  A    Because that's not how it happened.

9  Q    You don't have any document to support that, do you?

10 A    I can get the documents.

11 Q    I'm asking you did you bring that document today?

12 A    No.

13         MR. EVERETT:  No further questions.

14         THE COURT:  Mr. Chesnutt, back to you.

15                    REDIRECT EXAMINATION

16 BY MR. CHESNUTT:

17 Q    Exhibit Number 11, under AK Builders and Coatings, Inc.,

18 is that your signature?

19 A    Yes.

20 Q    Okay.  And the check was made to you -- I mean, to whom?

21 A    AK Builders.

22 Q    Okay.

23         MR. CHESNUTT:  No further questions.

24         THE COURT:  All right, thank you.

25         Any --

36

1          MR. EVERETT:  (No audible response).

2          THE COURT:  All right, sir.  You may step down.

3    Thank you.

4          THE WITNESS:  Thank you.

5      (Witness excused at 11:56 a.m.)

6      (Requested testimony concluded at 11:56 a.m.)

7                    * * * * *

8

9

10               **C E R T I F I C A T I O N**

11     We, DIPTI PATEL and MICHELLE ROGAN, court-approved

12   transcribers, certify that the foregoing is a correct

13   transcript from the official electronic sound recording of the

14   proceedings in the above-entitled matter, and to the best of my

15   ability.

16

17   /s/ Dipti Patel
     _____

18   DIPTI PATEL, CET-997

19

20   /s/ Michelle Rogan
     _____

21   MICHELLE ROGAN

22   LIBERTY TRANSCRIPTS            DATE:  May 2, 2024

23

24

25

**WWW.LIBERTYTRANSCRIPTS.COM**

BTXN 208 (rev. 07/09)

IN RE: Vaituulala v. N and K Properties, LLC et al       TRIAL       Case # 23−04018−mxm

DEBTOR

## TYPE OF HEARING

Mele L Vaituulala       *VS*       N and K Properties, LLC

**PLAINTIFF / MOVANT**            **DEFENDANT / RESPONDENT**

Charles R. Chesnutt, Sr.            Clayton Everett

**ATTORNEY**            **ATTORNEY**

### EXHIBITS

Plaintiff's Exhibits #1−4 ADMITTED (Amended W&E List− ECF 39, Exhibits − ECF 32)

Defendant's Exhibits #1−13 ADMITTED (Amended W&E List − ECF 38; Exhibit copies provided to the court)

Defendant's Exhibit #14 ADMITTED (Copy provided to the court)

−Exhibit 14 is a transcript. Only portions that were used during cross with witness #2 are admitted.

Jeanette Almaraz       02/01/2024       Mark X. Mullin

REPORTED BY       HEARING DATE       JUDGE PRESIDING

CHARLES R. CHESNUTT, P.C.
2608 Hibernia Street, Office 107
Dallas TX 75204

COUNSEL FOR MELE VIATUULALA

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

IN RE:                                        CASE NO. 22-42980

    MELE L. VIATUULALA

DEBTOR

---

MELE L. VIATUULALA                            ADV. NO. 23-04018
    Plaintiff

    vs

L AND K PROPERTIES LLC
    Defendant

---

## WITNESS LIST and EXHIBIT LIST

TO THE HONORABLE MARK X. MULLIN

Now comes Mele Viatuulala and presents the following witness and exhibit list.

### Witnesses

1. Mele Vaituulala

2. Al Vaituulala

3. Stina Vaituulala

4. Any party called to testify by the other side

1

5. Any rebuttal evidence.

## Exhibits

Admitted: Y or N

1. Trustee's Deed

2. Notice of Bankruptcy of Al Viatuulala

3. Deed

4. Deed of Trust

Mele Vaituulala may offer any evidence listed by the other party for rebuttal,

impeachment.


Respectfully submitted by,

s/  Charles R. Chesnutt

CHARLES R. CHESNUTT, P.C.
2608 Hibernia Street, Office 107
Dallas TX 75204    Texas Bar 04186800
_____

972.248.7000
972.559.1872 (fax)
crc@chapter7-11.com

COUNSEL FOR MELE VIATUULALA


## Certificate of Service

The undersigned hereby certifies that on Tuesday, January 02, 2024 he caused a copy of the above and foregoing to be served on all those requesting service.


s/ Charles R. Chesnutt

2

000135

D219290268   12/18/2019 9:20 AM PG   Fee: $36.00   Submitter: CSC ERECORDING SOLUTIONS
Electronically Recorded by Tarrant County Clerk in Official Public Records   *Mary Louise Nicholson*

Mary Louise Nicholson

*NOTICE OF CONFIDENTIALITY RIGHTS:*
*IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION*
*FROM THIS INSTRUMENT BEFORE IT IS FILED OF RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY*
*NUMBER OR YOUR DRIVER'S LICENSE*

## DEED OF TRUST

**THE STATE OF TEXAS** §
**COUNTY OF TARRANT** §

Date:  December 17, 2019

Grantor:      AK Builders and Coatings, Inc.
Grantor's Mailing Address (including county):      6624 Valley Hi Drive,
Sacramento, California 95823

Trustee:      Sharon B. Smith
Trustee's Mailing Address (including county):      1905 Central Drive, #103, Bedford
Tarrant County, Texas 76021

Beneficiary:    N and K Properties, LLC      5450 Thornwood Drive, San Jose,
Beneficiary's Mailing Address (including county):    Santa Clara County, California  95123

Note(s)

Date: December 17, 2019

Amount: One Hundred Twenty-Five Thousand Dollars ($125,000.00)

Maker: AK Builders and Coatings, Inc.

Payee:   N and K Properties, LLC

Final Maturity Date:  January 28, 2020

Terms of Payment:

One Hundred Fifty Five Thousand Dollars ($155,000.00) due at maturity.

Property (including any improvements):

Lot 14, Block 1, COLONY HEIGHTS ADDITION, an addition to the City of Arlington,
Tarrant County, Texas, according to the Plat thereof recorded in Volume 388-75, Page
36, Plat Records, Tarrant County, Texas.

Prior Lien(s) (including any improvements):

For value received and to secure payment of the note, Grantor conveys the property to Trustee in trust. Grantor warrants and agrees to defend the title to the property. If Grantor performs all the covenants and pays the note according to its terms, this Deed of Trust shall have no effect, and Beneficiary shall release it at Grantor's expense.

Grantor's Obligations

Grantor agrees to:
1. keep the property in good repair and condition;
2. Grantor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the property;
3. pay all taxes and assessments on the property when due;
4. preserve the lien's priority as it is established in this deed of trust;
5. maintain, in a form acceptable to Beneficiary, an insurance policy that:
   a. covers all improvements for their full insurable value as determined when the policy is issued and renewed, unless Beneficiary approves a smaller amount in writing
   b. contains an eighty percent (80%) coinsurance clause;
   c. provides fire and extended coverage, including windstorm coverage;
   d. protects Beneficiary with a standard mortgage clause;
   e. provides flood insurance at any time the property is in flood hazard area; and
   f. contains such other coverage as Beneficiary may reasonably require;
6. comply at all times with the requirements of the eighty percent (80%) coinsurance clause;
7. deliver the insurance policy to Beneficiary and deliver renewals to Beneficiary as least ten (10) days before expiration.
8. keep any buildings occupied as required by the insurance policy, and
9. if this is not a first lien, pay all prior lien notes that Grantor is personally liable to pay and abide by all prior lien instruments.

Beneficiary's Rights

1. Beneficiary may appoint in writing a substitute or successor trustee, succeeding to all rights and responsibilities of Trustee.
2. If the proceeds of the note are used to pay any debt secured by prior liens, Beneficiary is subrogated to all of the rights and liens of the holders of any debt so paid.
3. Beneficiary may apply an proceeds received under the insurance policy either to reduce the note or to repair or replace damaged or destroyed improvements covered by the policy.

Page 3 of 5

Case 23-04018-mxm    Doc 32-1    Filed 11/16/23    Entered 11/16/23 14:28:30    Desc
Case 4:24-cv-00295-O Index Document 2-2 Filed 05/06/24 Page 86 of 99    PageID 202

4.    If Grantor fails to perform any of Grantor's obligations, Beneficiary may perform those obligations and be reimbursed by Grantor on demand at the place where the note is payable for any sums so paid, including attorney's fees, plus interest on those sums from the dates of payment at the rate stated in the note for matured, unpaid amounts.    The sums to be reimbursed shall be secured by this deed of trust.

5.    If Grantor defaults on the note or fails to perform any of Grantor's obligations or if default occurs in a prior lien note or other instrument, and the time within which it must be cured, as may be required by law or by written agreement, then Beneficiary may:

   a.    declare the unpaid principal balance and earned interest on the note immediately due;

   b.    request Trustee to foreclosure this lien, in which case Beneficiary agent shall give notice of the foreclosure sale as provided by the Texas Property Code as then amended; and

   c.    purchase the property at any foreclosure sale by offering the highest bid and then have the bid credited on the note.

Trustee's Duties

If requested by Beneficiary to foreclose this lien, Trustee shall:

1.    either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then amended; provided however, the notice provided by beneficiary must allow for a minimum of 60 days to cure;

2.    sell and convey all or part of the property to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to other exceptions to conveyance and warranty; and

3.    from the proceeds of the sale, pay, in this order:

   a.    expenses of foreclosure, including a commission to Trustee of five percent (5%) of the bid;

   b.    to Beneficiary, the full amount of principal, interest, and attorney's fees and other charges due and unpaid;

   c.    any amounts required by law to be paid before payments to Grantor, and

   d.    to Grantor, any balance.

General Provisions

1.    If any of the property is sold under this deed of trust, Grantor shall immediately surrender possession to the purchaser.  If Grantor fails to do so, Grantor shall become a tenant at sufferance of the purchaser, subject to any action for forcible detainer.

2.    Recitals in any Trustee's deed conveying the property will be presumed to be true.

3.    Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

DEED OF TRUST

Page 4 of 5

Case 23-04018-mxm    Doc 32-1    Filed 11/16/23    Entered 11/16/23 14:28:30    Desc
Case 4:24-cv-00295-O Index ument 2-2 Filed 05/06/24 Page 4 of 5 Page 87 of 99    PageID 203

4.  This lien shall be superior to liens later created even if the time of payment of all or part of the note is extended or part of the property is released.

5.  If any portion of the note cannot be lawfully secured by this deed of trust, payments shall be applied first to discharge that portion.

6.  Grantor assigns to Beneficiary all sums payable to or received by Grantor from condemnation of all or port of the property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the property.  After deducting any expenses incurred, including attorney's fees, Beneficiary may release any remaining sums to Grantor or apply such sums to reduce the note.  Beneficiary shall not be liable for failure to collect or to exercise diligence in collecting any such sums.

7.  Grantor assigns to Beneficiary absolutely, not only as collateral, all present and future rent and other income and receipts from the property.  Leases are not assigned.  Grantor warrants the validity and enforceability of the assignment.  Grantor may as Beneficiary's licensee collect rent and other income and receipts as long as Grantor is not in default under the note or this deed of trust.  Grantor will apply all rent and other income and receipts to payments of the note and performance of this deed of trust, but if the rent and other income and receipts exceed the amount due under the note and deed of trust, Grantor may retain the excess.  If Grantor defaults in payment of the note or performance of this deed of trust, Beneficiary may terminate Grantor's license to collect and then as Grantor's agent may rent the property if it is vacant and collect all rent and other income and receipts.  Beneficiary neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the property.  Beneficiary may exercise Beneficiary's rights and remedies under this paragraph without taking possession of the property.  Beneficiary shall apply all rent and other income receipts collected under this paragraph first to expenses incurred in exercising Beneficiary's rights and remedies and then to Grantor's obligations under the note and this deed of trust in the order determined by Beneficiary.  Beneficiary is not required to act under this paragraph and acting under this paragraph does not waive any of Beneficiary's other rights or remedies.  If Grantor becomes a voluntary or involuntary bankrupt, Beneficiary filing a proof of claim in bankruptcy will be tantamount to the appointment of a receiver under Texas law.

8.  Interest on the debt secured by this deed of trust shall not exceed the maximum amount of non-usurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount shall be credited on the principal of the debt or; if that has been paid, refunded.  On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded.  This provision overrides other provisions in this and all other instruments concerning the debt.

9.    When the context requires, singular nouns and pronouns include the plural.

10.   The term note includes all sums secured by this deed of trust.

11.   This deed of trust shall bind, inure to the benefit of, and may be exercised by successors in interest of all parties.

12.   If Grantor and Maker is not the same person, the term Grantor shall include Maker.

13.   Grantor represents that this deed of trust and note are given for the following purposes: Purchase Money for commercial real estate.

AK Builders and Coatings, Inc.

By: _____
Al Vaituulala

## ACKNOWLEDGMENT

THE STATE OF TEXAS    §
COUNTY OF TARRANT   §

BEFORE ME, the undersigned authority, personally appeared **Al Vaituulala, President of AK Builders and Coatings, Inc.,** and acknowledged to me that he executed same for the purposes and consideration therein expressed, pursuant to his corporate authority.

GIVEN UNDER MY HAND AND SEAL on this the 28 day of October 2019.

WILLIAM RYAN IGLESIA
MY COMMISSION EXPIRES
JULY 9, 2023
NOTARY ID: 130290754

_____
Notary Public - State of Texas

**Return Original To:**
**Sharon B. Smith, P.C.**
**1905 Central Drive, #103**
**Bedford, Texas 76021**

DEED OF TRUST

Page 5

000140

Page 1 of 2

Case 23-04018-mxm    Doc 32-2    Filed 11/16/23    Entered 11/16/23 14:28:30    Desc
Case 4:24-cv-00295-O    Appendix 2    Filed 03/08/24    Page 89 of 99    PageID 205

D219252640   11/4/2019 7:53 AM   PGS 2   Fee: $24.00   Submitter: CSC ERECORDING SOLUTIONS

Electronically Recorded by Tarrant County Clerk in Official Public Records   *Mary Louise Nicholson*

Mary Louise Nicholson

*NOTICE OF CONFIDENTIALITY RIGHTS:*
*IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING*
*INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED OF RECORD IN THE PUBLIC*
*RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE*

## GENERAL WARRANTY DEED
## WITH VENDOR'S LIEN

SS0001318

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | |
| | § | **KNOW ALL MEN BY THESE PRESENTS:** |
| **COUNTY OF TARRANT** | § | |

Date:        October 28, 2019

Grantors:    Alfred Vaituulala and Mele L. Vaituulala
Grantors' Mailing Address (including county):   2005 Stacey Court, Arlington,
                                                Tarrant County, Texas 76013

Grantee:     AK Builders and Coatings, Inc.
Grantee's Mailing Address (including county):   6624 Valley Hi Drive,
                                                Sacramento, California 95823

Consideration:   Ten Dollars ($10.00) and a note of even date executed by Grantee and payable to the order of N and K properties, LLC, in the principal amount of One Hundred Twenty-Five Thousand Dollars ($125,000.00). This note is secured by a first and superior Vendor's Lien and Superior Title retained in this deed in favor of Grantors and transferred to N and K Properties, LLC by a first-lien deed of trust of even date from Grantee to Sharon B. Smith, Trustee.

Property (including any improvements):

    Lot 14, Block 1, COLONY HEIGHTS ADDITION, an addition to the City of Arlington, Tarrant County, Texas, according to the Plat thereof recorded in Volume 388-75, Page 36, Plat Records, Tarrant County, Texas.

Reservations from and Exceptions to Conveyance and Warranty:

    This conveyance is made and accepted subject to the following matter, to the extent same are in effect at this time:

        Any and all restrictions, covenants, conditions, easements, if any, relating to the hereinabove described property, but only to the extent they are still in effect, and show of record in the hereinabove mentioned County and State; to all zoning laws, regulations and ordinances of municipal and/or other governmental authorities, if any, but only to the extent that they are still in effect and relating to the hereinabove described property; any visible and apparent easements.

Grantors, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, GRANT, SELL and CONVEY all of their interest to Grantee in the property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever. Grantors bind Grantors and Grantors' heirs, executors, administrators, and successors to warrant and forever defend all and singular

Page 2 of 2

Case 23-04018-mxm    Doc 32-2    Filed 11/16/23    Entered 11/16/23 14:28:30    Desc
Case 4:24-cv-00295-O    Appendix 2-2    Filed 05/06/24    Page 90 of 99    PageID 206

the property to Grantee and Grantee's heirs, executors, administrators, successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty.

But it is expressly agreed that the Vendor's Lien, as well as the Superior Title in and to the above described premises, is retained against the above described property, premises and improvements until the above described note and all interest thereon are fully paid according to the face, tenor, effect and reading thereof, when this Deed shall become absolute.

Dated this 26 day of _October_, 2019.

_____
By: Alfred Vaituulala

_____
By: Mele L. Vaituulala

THE STATE OF TEXAS        §
COUNTY OF TARRANT      §

This instrument was acknowledged before me by the said Alfred Vaituulala and Mele L. Vaituulala, on the 28 day of _October_, 2019.



WILLIAM RYAN IGLESIA
MY COMMISSION EXPIRES
JULY 9, 2023
NOTARY ID: 130290754

_____
Notary Public – State of Texas

Prepared by the Law Offices of:
SHARON B. SMITH, P.C.
1905 Central Drive, Suite 203
Bedford, Texas 76021
(817) 354-7661

**NOTE**

Sharon B. Smith, P.C., a Professional Corporation, has formed no opinion as to the title of the property described above. It has prepared this document based on information supplied by the Grantor and/or Grantee and on such other available information. Neither Sharon B. Smith, P.C., nor Sharon B. Smith, Attorney, individually, make any representation and/or warranty of any type regarding either title to this property or the legal effect of this transaction.

AFTER RECORDING, RETURN TO:
Sharon B. Smith, P.C.
1905 Central Drive, Suite 103
Bedford, Texas 76021

Case 23-04018-mxm   Doc 32-3   Filed 11/16/23   Entered 11/16/23 14:28:30   Desc
Case 4:24-cv-00295-O   Document 8-2   Filed 05/06/24   Page 91 of 99   PageID 207
Exhibit ex 3  Notice of Bankruptcy AK Builders   Page 1 of 6

RECORDING REQUESTED BY:

Geoffrey Richards, Bankruptcy Trustee



**D220308483**
11/24/2020 11:27 AM          Page: 1 of 6          Fees: $35.00
PETITION
SUBMITTER: HEFNER STARK & MAROIS

MARY LOUISE NICHOLSON
COUNTY CLERK

WHEN RECORDED MAIL TO:

Geoffrey Richards, Bankruptcy Trustee
c/o Hefner, Stark & Marois, LLP
2150 River Plaza Drive, Suite 450
Sacramento, CA 95833-4136
(916) 925-6620

## TITLE OF DOCUMENT

## CHAPTER 11 VOLUNTARY BANKRUPTCY PETITION

## AK BUILDERS AND COATINGS, INC

Tax ID / EIN: ████ 6283

Filed on July 29, 2019

Bankruptcy Case No. 19-24759
United States Bankruptcy Court
Eastern District of California
Sacramento Division
(4 pages)

Fill in this information to identify the case:

United States Bankruptcy Court for the:

Eastern ____ District of California
                              (State)

Case number (if known): _____ Chapter ____

☐ Check if this is an
amended filing

*19-24759*

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy   4/19

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

**1. Debtor's name**  AK Builders and Coatings, Inc

**2. All other names debtor used in the last 8 years**

Include any assumed names, trade names, and *doing business as* names

**3. Debtor's federal Employer Identification Number (EIN)**  ██ ─ 6 2 8 3

**4. Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| 6624 Valley High Road | POB 188487 |
| Number   Street | P.O. Box |
| Sacramento    CA    95823 | Sacramento    CA    95818 |
| City    State    ZIP Code | City    State    ZIP Code |
| | **Location of principal assets, if different from principal place of business** |
| Sacramento | 10777 and 10779 Walker Trail Road |
| County | Number    Street |
| | Copperopolis    CA    95228 |
| | City    State    ZIP Code |

**5. Debtor's website (URL)**

**6. Type of debtor**
☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
☐ Partnership (excluding LLP)
☐ Other. Specify: _____

Official Form 201    Voluntary Petition for Non-Individuals Filing for Bankruptcy    page 1



This is to certify that this is a true and correct copy of the original ___ page(s) filed on _7-29-19_ in the office of the Clerk, U.S. Bankruptcy Court.

WAYNE BLACKWELDER
U.S. Bankruptcy Court

By _____
Deputy Clerk

000144

D220308483

Case 23-04018-pxm Doc 32-3 Filed 11/16/23 Entered 11/16/23 14:28:30 Desc Page 3 of 6
Case 4:24-mc-00238-O Document 2-1 Filed 08/06/24 Page 93 of 99 PageID 209
Case Number Exhibit 2 Notice of Bankruptcy 2015 Builders Soc Page 3 of 6

Debtor _____ Case number *(if known)* _____
     Name

| | |
|---|---|
| **7. Describe debtor's business** | **A. Check one:** |

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

**B. Check all that apply:**

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

**C.** NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

___ ___ ___ ___

| | |
|---|---|
| **8. Under which chapter of the Bankruptcy Code is the debtor filing?** | **Check one:** |

☐ Chapter 7

☐ Chapter 9

☐ Chapter 11. **Check all that apply:**

    ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625 (amount subject to adjustment on 4/01/22 and every 3 years after that).

    ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☐ A plan is being filed with this petition.

    ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

    ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

    ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

| | |
|---|---|
| **9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?** If more than 2 cases, attach a separate list. | ☐ No<br>■ Yes. District EDCA   When 07/26/2017   Case number 17-24904<br>                                    MM / DD / YYYY<br>          District EDCA   When 08/23/2016   Case number 16-25556<br>                                      MM / DD / YYYY |

| | |
|---|---|
| **10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?** List all cases. If more than 1, attach a separate list. | ■ No<br>☐ Yes. Debtor _____    Relationship _____<br>          District _____    When _____<br>                                     MM / DD / YYYY<br>          Case number, if known _____ |

000145

D220308483

Case 23-04018-mxm Doc 32-3 Filed 11/16/23 Entered 11/16/23 14:28:20 Desc
Case 4:24-cv-00238-O Document 1-1 Filed 03/18/24 Page 94 of 99 PageID 230
Case Number 2023-xxx Notice of Bankruptcy All Builders Soc Page 4 of 6

Page 4 of 6

| Debtor | Case number _(if known)_ |
|--------|--------------------------|
| Name | |

**11. Why is the case filed in _this district_?**

_Check all that apply:_

☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** _(Check all that apply.)_

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?**

_____ _____
Number   Street

_____
City          State   ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact name _____

Phone _____

---

**Statistical and administrative information**

**13. Debtor's estimation of available funds**

_Check one:_

☑ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

☑ 1-49  ☐ 1,000-5,000  ☐ 25,001-50,000
☐ 50-99  ☐ 5,001-10,000  ☐ 50,001-100,000
☐ 100-199  ☐ 10,001-25,000  ☐ More than 100,000
☐ 200-999

**15. Estimated assets**

☐ $0-$50,000  ☑ $1,000,001-$10 million  ☐ $500,000,001-$1 billion
☐ $50,001-$100,000  ☐ $10,000,001-$50 million  ☐ $1,000,000,001-$10 billion
☐ $100,001-$500,000  ☐ $50,000,001-$100 million  ☐ $10,000,000,001-$50 billion
☐ $500,001-$1 million  ☐ $100,000,001-$500 million  ☐ More than $50 billion

Official Form 201     Voluntary Petition for Non-Individuals Filing for Bankruptcy     page 3

000146

| Debtor | | Case number (if known) |
|--------|--|------------------------|
| | Name | |

**16. Estimated liabilities**

- ☐ $0-$50,000
- ☐ $50,001-$100,000
- ☐ $100,001-$500,000
- ☐ $500,001-$1 million
- ☑ $1,000,001-$10 million
- ☐ $10,000,001-$50 million
- ☐ $50,000,001-$100 million
- ☐ $100,000,001-$500 million
- ☐ $500,000,001-$1 billion
- ☐ $1,000,000,001-$10 billion
- ☐ $10,000,000,001-$50 billion
- ☐ More than $50 billion

---

### Request for Relief, Declaration, and Signatures

**WARNING** — Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 07/29/2019
　　　　　 MM / DD / YYYY

✗ _____    Alifeleti K. Vaituulala
Signature of authorized representative of debtor    Printed name

Title President

**18. Signature of attorney**

✗ /s/ Michael M. Noble
Signature of attorney for debtor

Date 07/29/2019
MM / DD / YYYY

Michael M. Noble
Printed name

Firm name
2017 5th Street
Number    Street

Sacramento    CA    95818
City    State    ZIP Code

916.370.7742    msntaxbk@aol.com
Contact phone    Email address

170934    CA
Bar number    State

---

Official Form 201    Voluntary Petition for Non-Individuals Filing for Bankruptcy    page 4

D220308483

Case 23-04018-mxm   Doc 32-3   Filed 11/16/23   Entered 11/16/23 14:28:30   Desc   Page 6 of 6
Case 4:24-cv-00295-O   Document 3-2   Filed 05/06/24   Page 96 of 99   PageID 212
Exhibit ex 3 Notice of Bankruptcy AR Builders   Page 6 8P 6

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS OF
TARRANT COUNTY, TEXAS
11/24/2020 11:27 AM

D220308483
PETITION
Pages: 6
Fees: $35.00



Mary Louise Nicholson
MARY LOUISE NICHOLSON
COUNTY CLERK



## SUBSTITUTE TRUSTEE'S DEED

I, G. Craig Hubble, as Substitute Trustee under the Deed of Trust hereinafter described, in consideration of the sum of $135,000.00N paid by N and K Properties, LLC, hereby grant, sell, and convey to N and K Properties, LLC, its heirs and assigns forever, all that real property described as follows:

Property Address:   2005 Stacy Court, Arlington, Texas 76013

Legal Description:   Lot 14, Block 1, Colony Heights Addition, an addition to the City of Arlington, Tarrant County, Texas, according to the plat recorded in Volume 388-75, Page 36, Plat Records, Tarrant County, Texas.

with all the rights and appurtenances thereto. I also hereby bind N and K Properties, LLC, its heirs, personal representatives, successors, and assigns, forever to warrant and defend this real property against all persons claiming it.

This conveyance is made pursuant to the powers conferred on me by the Deed of Trust dated December 17, 2019, being Document D219290268 of the real property records of Tarrant County, Texas on December 18, 2019, executed by AK Builders an Coatings, Inc as Grantor to Sharon B. Smith, as Trustee for the benefit of N and K Properties, LLC, and referred to in this instrument as the Deed of Trust.

The sale of the property was conducted in strict accordance with law and with the terms of the Deed of Trust. All the conditions and prerequisites to the sale were performed.

The property was sold because AK Builders and Coatings, Inc. defaulted in the obligations of the promissory note dated October 24, 2019, in the original principal amount of $125,000.00, which the Deed of Trust was given to secure. The nature of this default, which existed at the time of sale, was, was the failure to make the payments on the note when due. The unpaid balance due on the note at the time of sale was $125,000.00 plus accrued interest.

N and K Properties, LLC, as the holder of the note, presented the note and made due demand on AK Builders and Coatings, Inc to cure the above-described default. N and K Properties, LLC made due demand on me as Substitute Trustee to sell the property pursuant to the terms of the deed of trust. Twenty-one days before the date of the sale, a Notice of Trustee's Sale dated March 17, 2020 giving the time and place of sale, was properly posted, filed, and sent to each debtor obligated to pay the debt. The property was sold at public auction on Tuesday, April 7, 2020, at 11:41 A.M. in Tarrant County, Texas, the county in which the property is situated, in full accordance with law and the terms of the deed of trust. N and K Properties, LLC was the highest bidder at the sale, and paid to me the amount bid, being $135,000.00 in the form of credit against the amount due under the terms of the note and Deed of Trust.

The beneficiary of the deed of trust appointed and substituted me as trustee under this deed of trust by a substitution dated March 16, 2020. As substitute trustee, I am vested with and succeed to all the powers and duties given to the original trustee.

---

SUBSTITUTE TRUSTEE'S DEED                                                                 Page 1

Signed this _21_ day of April, 2020.

G. Craig Hubble, Substitute Trustee
The Hubble Law Firm, PLLC
301 W. Abram Street
Arlington, TX 76010
Ph. 817-265-7771
Fax 817-861-9008

## ACKNOWLEDGMENT

State of Texas

County of Tarrant

This document was acknowledged before me on, a notary public, the _21_ day of April, 2020,
by G. Craig Hubble.

LAURA LELONI WEST
Notary Public, State of Texas
Comm. Expires 02-23-2024
Notary ID 11818731

Notary Public



MARY LOUISE NICHOLSON
COUNTY CLERK

100 West Weatherford   Fort Worth, TX  76196-0401

PHONE (817) 884-1195

HUBBLE LAW FIRM PLLC
301 W ABRAM
ARLINGTON, TX 76010

Submitter:   HUBBLE LAW FIRM PLLC

## ***DO NOT DESTROY***
## ***WARNING - THIS IS PART OF THE OFFICIAL RECORD.***

Filed For Registration:   4/28/2020 9:32 AM
Instrument #:   D220095656
TRD          3          PGS          $23.00

By: _____

D220095656

ANY PROVISION WHICH RESTRICTS THE SALE, RENTAL OR USE OF THE DESCRIBED REAL PROPERTY
BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.